MICHAEL J. DRUMMOND *vs.* MARIE L. CRANE & another,
administrators.

Berkshire.    September 12, 1893. — October 20, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Contract — Survival of Obligation — Damages.*

B. agreed in writing with A. as follows: "I hereby agree to enter into a formal contract with the H. Water Company when organized, binding myself to take at least seven hundred and fifty ($750) dollars' worth of water per annum for the period of ten years." A. accepted the offer, and furnished the consideration. Just afterwards, and before the water was ready for delivery, B. died, and his administrator refused to perform the contract. B. wanted the water to use in his business, which was the manufacture of woollens under a lease with the M. Mills, by the terms of which the mills had a right to terminate the lease within three months of B.'s death, and did so. A. knew the kind of business in which B. was engaged, and that it was carried on under some arrangement with the M. Mills, but did not know what the arrangement was. *Held,* that B.'s obligation to take the water for ten years survived to his administrator, who was liable upon the contract to A.; and that it was immaterial that the formal or second contract was to be made with another party. *Held, also,* that A. was entitled to recover the present value of each yearly payment, deducting such sums as the H. Water Company received or ought to have received for water used upon the premises, where it was understood by both parties that B. would take the water, although he had not bound himself to take it then.

In an action upon an obligation to take a certain quantity of water at a stated sum annually for ten years, full damages were allowed to be recovered, although the ten years had not elapsed, no objection being taken by counsel.

HOLMES J. This is an action of contract on the following writing:

"New York, June 11th, 1888. M. J. Drummond. Dear Sir, — I hereby agree to enter into a formal contract with the

Housatonic Water Company when organized, binding myself to take at least seven hundred and fifty ($750) dollars' worth of water per annum for the period of ten years on the following basis: Water for manufacturing purposes 12½ cents per 1,000 gallons, Hydrants $40.00 per annum each, Private Dwellings one tap for one family $8.00 per annum. In the construction of these waterworks they are to commence at Long Pond with a 14-inch pipe and continue with a 12-inch pipe, then reducing to 10-inch, then to 8-inch to the village, and using 6-inch and 4-inch distribution pipes. C. R. Crane."

This writing was signed in order to induce the plaintiff to build an aqueduct for the stock and bonds of the Housatonic Water Company, and the offer contained in it was made in consideration of the plaintiff's doing so. The plaintiff accepted the offer, furnished the consideration, and the promise became a binding contract. Just afterward Crane died, and his administrators refused to perform the contract. The first question is whether the administrators were bound to pay for the ten years, as agreed by Crane.

The question is not whether the administrators are bound by their intestate's contract. They are bound by it of course, whether named or not, because they represent his person. *Shelley's case*, 1 Co. Rep. 93, 96 a    *Iremonger* v. *Newsam*, Latch, 260, 261. *Day* v. *Worcester, Nashua, & Rochester Railroad*, 151 Mass. 302, 308. A sufficient proof is that they unquestionably would be liable for a breach by their intestate in his lifetime. The true question is whether the contract properly construed requires a continuance of the promised action beyond the lifetime of the promisor. It is the same question, and is to be answered in the same way, as if the promisor himself were alive for purposes of being sued, but dead for the purposes of performance.

The facts relied on by the defendants are, that, as the plaintiff knew, the reason why Crane wanted the water was that he might use it in his business; that his business was the manufacture of woollens under a lease and business arrangement with the Monument Mills; and that by the terms of his lease the mills had a right to terminate it, and did terminate it in fact within three months of Crane's death. The plaintiff knew

the kind of business in which Crane was engaged, and that it was carried on under some arrangement with the Monument Mills, but did not know what the arrangement was.

But the motives which induced Crane to make the promise are not so important an aid in determining its scope, as the object which the plaintiff manifestly had in exacting it. It was perfectly plain that the reason why the plaintiff required the promise as a condition of making his investment and building the reservoir was that he might have some security for returns. The plaintiff committed himself absolutely to the investment, whether Crane lived or died. Obviously the security which he wanted was one equally independent of Crane's life. From the point of view of the plaintiff the contract was like a guaranty upon executed consideration that he should have so much business for a certain time, which of course would run on whether the guarantor lived or died. See *Lloyd* v. *Harper*, 16 Ch. D. 290. It may be that it was prudent administration for the defendants to break the contract and to pay the damages, but we are of opinion that Crane's undertaking was to take the water for ten years, dead or alive. Very possibly he did not think of the chance of his dying, and might have hesitated if the present aspect of his contract had been called to his attention. But the circumstances and the words used gave notice of the extent of the obligation which he was entering into, and if we are to conjecture, it is as probable as anything else that the plaintiff would not have accepted less than by our construction he got. No cases very like the present have been called to our attention. We may mention *Kernochan* v. *Murray*, 111 N. Y. 306; *Chamberlain* v. *Dunlop*, 126 N. Y. 45; *Billings's appeal*, 106 Penn. St. 558; and *Martin* v. *Hunt*, 1 Allen, 418, 419.

The considerations which we have put forward are not affected by the fact that the contract sued upon contemplated another more formal contract. That is merely an additional wheel in the machinery. Nor does it matter that the second contract would be made with another party. It was expected that the plaintiff would become the owner of substantially all the stock of the water company when it was issued, and he did so, so that his interest was substantially the same with reference to the present question as if it had been agreed that the second contract should run to him.

The other question reserved by the report concerns the measure of damages. The judge who tried the case, without a jury, found that the cost of delivering the water was nothing, and ruled that the plaintiff was entitled to recover the present value of each yearly payment deducting such sums as the water company received or ought to have received for water used upon the premises occupied by Crane at the time of his decease. Only the plaintiff complains of this ruling. We have no doubt that the defendants are right in conceding that the plaintiff is entitled to recover substantial damages, subject to any just deductions. It does not matter how the contractee is interested to have a contract performed, whether directly or because he is a stockholder in a corporation, if he is interested. It has been held in England that trustees can recover to the extent of the interest of their *cestuis que trust*. *Lloyd* v. *Harper*, 16 Ch. D. 290. Also the intended intervention of a second contract is not important. *Pratt* v. *Hudson River Railroad*, 21 N. Y. 305. *Driggs* v. *Dwight*, 17 Wend. 71.

The matter of the deductions is more difficult to deal with. Even if the contract were as broad as upon this question the plaintiff's interest would have it regarded, some circumstances can be imagined which would make the damages only nominal at most. The object being, as we have said, to secure the plaintiff a return for his investment by guaranteeing a certain amount of custom, if the plaintiff's company had customers for all the water which it could furnish, only nominal damages ought to be allowed. The same consideration of the object of the contract points also to some latitude of construction as to what constitutes performance. If the contract had specified the buildings in which the water was to be taken, there could be no doubt that the ruling was right. The contract would mean, not that Crane personally would take so much water at all events, but that so much water should be taken in those buildings. The contract does not specify any buildings, but still we are of opinion that it does not require a personal taking of the water throughout the ten years. It is satisfied if the taking was started by Crane, and its continuance fairly may be attributed to him. When the contract was made both parties understood that Crane made it for the sake of his factory in the building of

the Monument Mills. If Crane in his lifetime had taken water there and after his death his administrators had done the same, and then within the ten years the factory had changed hands and the same amount of water was taken afterwards, it would be a hard construction to deny that the contract adopted in advance Crane's choice of place to the extent that a continuous taking of water in the same place was a performance. The obligation to take the water would not follow Crane's person and estate so far as to bind the administrators to take water in another place in addition. So, if Crane, after taking water, himself had sold the factory. Things had not gone quite so far as we have supposed, because Crane died just before the water was ready for delivery. Yet it seems very plain, and, as we take it, was inferred by the judge who tried the case, that the places in respect of which the judge made the allowances were understood by both parties to be places at which the water was to be delivered. No doubt Crane was free to change his place of performance, but a taking at the factory satisfied the contract *pro tanto*. As to the sums allowed by the judge for water furnished to the two tenements of the Crane estate, the facts do not appear in any detail.* We cannot say that the allowance was not right, upon the principles which we have explained.

No objection has been raised to the recovery in this action of all the damages which ever can be recovered, although the ten years have not elapsed. It seems to be assumed that the case is governed by *Paige* v. *Barrett,* 151 Mass. 67, and the cases there cited. We do not disturb the assumption. If it be made, the deductions to be allowed on account of earnings in the future must be matters of estimate.

*Judgment on the finding.*

*T. P. Pingree & C. E. Burke,* for the plaintiff.
*M. Wilcox,* (*A. C. Collins* with him,) for the defendants.

---

* Upon this part of the case, the report recited that the judge found as follows: "The said Housatonic Water Company delivered water during the year ending December 1, 1889, to two tenements of the premises occupied by Crane at the time of his death; that said corporation was entitled to receive for said water the sum of sixteen dollars at the end of said year; and that it has continued to furnish water to said tenements to the time of this hearing, and is entitled to receive for such water so furnished at the rate of sixteen dollars per annum."