GEORGE W. BROWN, executor, *vs.* WILLIAM C. CUSHMAN & another.

WILLIAM C. CUSHMAN & another *vs.* GEORGE W. BROWN, executor.

Essex. March 10, 1899. — May 18, 1899.

Present: HOLMES, KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Contract — Survival of Action — Principal and Agent — Conversion.*

A written contract between A. and B., whereby B. is not the purchaser of merchandise manufactured by A., has no property interest in it, is not answerable to A. for the uncollectible bills on sales made by him, but is simply A.'s agent to sell the merchandise, which he actually sells in A.'s name, and so bills to the

purchasers, is in the nature of a contract of agency and is terminated by the death of A.

At the time of the death of the principal, certain merchandise manufactured by him was then unsold in the hands of his agent. Some of this was subsequently sold with the consent of the executor of the will of the principal, but he ordered the agent soon after to stop. At the trial of an action of tort for conversion the judge found that about two and a half months thereafter the executor demanded of the agent all the merchandise then in his possession, and it was conceded that it was not given up. *Held,* that, upon this finding in connection with facts not in dispute, the judge was right in refusing to rule that upon all the evidence the plaintiff could not recover.

TWO ACTIONS, one of tort for conversion, and the other of contract for a breach thereof. Trial in the Superior Court, without a jury, before *Fessenden,* J., who found for the plaintiff in the first case and the defendant in the second; and the defendants in the first case and the plaintiffs in the second alleged exceptions, which appear in the opinion.

*C. F. Choate, Jr.,* for the Cushmans.

*G. C. Abbott,* for Brown.

HAMMOND, J. The first case is an action of tort for the conversion of certain gelatine, and the second is an action for an alleged breach of contract. They were tried together in the Superior Court before a judge, sitting without a jury, who made certain findings of fact, declined in each case to rule that the contract out of which the litigation arises was not terminated by the death of William H. Brown, and declined also to rule in the action of tort that upon the evidence the plaintiff could not recover; and, having declined so to rule, found for Brown in each case.

The first question is whether the contract is terminated by the death of William H. Brown. The contract is as follows:

" We, the undersigned, William H. Brown, of Peabody, State of Massachusetts, manufacturer of gelatine, and Cushman Brothers, of the city of New York, manufacturers' and packers' agents, hereby mutually agree as follows: Cushman Bros. agree to use their best energy in pushing the sale of William H. Brown's Sunlight Flaked Gelatine throughout the United States, either personally, or through approved representatives. After the gelatine is landed in Cushman Bros.' store, they agree to make no charge to William H. Brown, of any nature, for selling, delivering, billing, collecting, etc., except the one charge of a com-

mission of twenty-five (25%) per cent on all sales (except as hereinafter provided in the cities of New York and Brooklyn). Not to sell any other gelatine than that manufactured by William H. Brown. William H. Brown hereby appoints Cushman Bros. his sole agents for the United States for his Sunlight Flaked Gelatine, for five years from the first day of May, 1893, and agrees to pay Cushman Bros. therefor a commission of twenty-five (25%) per cent on all sales made either directly or indirectly in the United States (except as hereinafter provided in the cities of New York and Brooklyn). For New York and Brooklyn William H. Brown agrees to pay Cushman Bros. in lieu of the twenty-five (25%) per cent commission, a salary of fifteen ($15) dollars per week and twelve and one half (12½%) per cent commission, payable at the end of each and every month during the said time. For this territory William H. Brown also agrees to pay Cushman Bros. two per centum for collecting where the services of a collector are required. On all business transactions in the foregoing arrangements, there is to be no charge for deliveries, but Cushman Bros. are to receive fifteen cents a case for cartage from the wharf to their store on all goods shipped to them by William H. Brown. The wholesale selling price is not to exceed $10.80 per gross, less 15%. (Signed) William H. Brown. Cushman Bros. Dated the 20th day of April, 1893.

"It is further agreed that Cushman Bros. shall render to W. H. Brown every four months a list of all accounts overdue for final settlement. Accounts that are uncollectible shall be written off and others shall be carried forward or goods returned. Cushman Bros., per Fear. William H. Brown."

Without doubt the general rule is that, in the absence of express words, the parties to a contract intend to bind their personal representatives as well as themselves, even although the contract may require years for its performance, as in the case of an ordinary promissory note, whether payable by instalments or otherwise, or in the case of an agreement to buy, receive, and pay for certain property at stated times, (*Drummond* v. *Crane*, 159 Mass. 577,) or to build a house or a ship, or to guarantee payments of certain dividends on stocks. *Kernochan* v. *Murray*, 111 N. Y. 306. *Drummond* v. *Crane, ubi supra.* On the other hand,

a contract may be of such a nature as to admit of only a personal performance, or as to imply that it is to be operative only during the existence of a certain state of affairs, although not so expressed in terms, and in such case the contract will be considered dissolved by death or disability, which makes the personal performance impossible, or which destroys the existence of such a state of affairs. A familiar illustration of such a contract is an agreement to paint a picture or write a book. *Kernochan* v. *Murray*, 111 N. Y. 306.

In many cases where it is sought to hold the legal representatives of a deceased party to a contract, the question really is not whether they are bound by his contract, but, as stated by Holmes, J., in *Drummond* v. *Crane*, " whether the contract properly construed requires a continuance of the promised action beyond the lifetime of the promisor," or, to state the principle in a form more applicable to the case at bar, whether the contract properly construed must be held to survive the death of the deceased party. Whenever such a question arises it is of course necessary to examine the language of the contract, and to ascertain the circumstances surrounding the parties at the time of its execution ; and while there are certain general rules applicable to the matter, still each case must be decided upon its own peculiar facts.

At the time of the execution of the contract, one of the parties was, and for some time had been, engaged in the manufacture of a certain kind of gelatine to which the name of Sunlight Flaked Gelatine had been given. The court has found that he possessed great personal skill in the manufacture of gelatine, and in the selection of the materials comprising it, which George W. Brown, the executor, did not possess, but that it was physically possible for the executor to manufacture gelatine of the same kind and quality which William H. Brown manufactured, and that there was in fact enough manufactured gelatine on hand at the time of William H. Brown's death to have supplied all Cushman Brothers required up to and for some time after September 1, 1893; that William H. Brown was in failing health at the time the contract was made, but expected to live, and never after that time gave personal attention to his business so far as going to the factory was concerned ; that he did

give constant directions and exercised supervision over the business and process of manufacturing the gelatine nearly up to the time of his death, July 15, 1893. It fairly may be assumed that it was in the contemplation of the parties that William's peculiar skill was to be used in the manufacture of the gelatine, so that its high quality might be maintained, and that therefore it would have been a breach of the contract upon his part if he had failed to continue to give the benefit of his skill to the manufacture.

Cushman Brothers were engaged in business in New York, as " agents for manufacturers' and packers of grocers' specialties," and desired to have the agency for the sale of the gelatine, and intended to take some measures to put it upon the market so as to make it successful.

Under these circumstances the contract was executed. By its terms Cushman Brothers agree " to use their best energy in pushing the sale of " the gelatine, " either personally or through approved representatives," and not to sell any other gelatine; and Brown appoints them his sole agents for that purpose, for five years from May 1, 1893. It fairly may be assumed that it was contemplated by the parties that Cushman Brothers should expend their own personal efforts in promoting the sale of the gelatine, or in the supervision of the work.

It will be seen that Cushman Brothers were not the purchasers of the gelatine; that they had no property interest in it, and were not even answerable to Brown for the uncollectible bills on sales made by them. They were simply his agents to sell the gelatine, and it was sold in his name, and so billed to the purchasers.

The agreement was in the nature of a contract of agency, and plainly contemplated the continuance of the manufacture of this particular kind of gelatine under the personal supervision of the principal, and its sale under the personal supervision of the agents.

It is a familiar law of agency that the relation ceases with the death of either party. Moreover by the death of the principal his supervision of the manufacture and the application of his skill became impossible ; and, since after the death of a principal no one can act as his agent, the state of affairs under which

the contract was to be carried out ceased to exist, and its performance as contemplated by the parties thereby also became impossible. The refusal to rule that the contract was not terminated by the death of William was correct.

In the action of tort for conversion the court declined to rule that, upon all the evidence, the plaintiff could not recover, and to this refusal the defendants excepted.

The power to make sales under the contract ceased with the death of the principal, and the gelatine then in the hands of Cushman Brothers remaining unsold belonged to his estate. Some of this was subsequently sold with the consent of the executor, but he ordered Cushman Brothers to stop on September 1, 1893. The court finds that the executor demanded of them on November 16, 1893, all the gelatine then in their possession, and that they had on hand unsold when the demand was made about forty-seven gross. It was conceded that the gelatine was not given up.

Upon this finding, in connection with facts not in dispute, the court was right in refusing to rule that, upon all the evidence, the plaintiff could not recover. *Exceptions overruled.*