JEROME D. MILLS *vs.* WILLIAM H. SMITH, executor.

Hampshire.    September 18, 1906. — October 16, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Practice, Civil,* Exceptions. *Agency,* Termination. *Contract,* Consideration, Validity, Performance and breach. *Perpetuities. Executor and Administrator. Damages. Fraud,* Who can take advantage of. *Res Inter Alios.*

A party to an action of contract cannot at the argument of exceptions taken by him complain of a ruling as to what instruments constituted the contract between the parties which was made by the judge at his request.

A power of attorney to convey real estate which is not coupled with an interest in the real estate is terminated by the death of the constituent. Here it was conceded that a right to be paid a compensation from the proceeds of the sale of the real estate was not such an interest.

In an action to enforce a promise contained in an instrument under seal reciting the receipt of a valuable consideration the defence of a want of mutuality is not open.

In a contract between the owner of lands in a distant State, the title to some of which is incumbered, to pay for the services of a citizen of that State in clearing the title to the lands and disposing of them, there is no lack of mutuality by reason of a provision in the contract that the person who is to perform the services agrees to give to the transaction of the business "as much of his time as to him may seem necessary" in order to manage the business properly and to "use his best judgment" in the disposition of the property and the settlement of all matters in dispute in regard to it.

In a contract between the owner of lands in a distant State, the title to some of which is incumbered, to pay for the services of a citizen of that State in clearing the title to the lands and disposing of them, which expressly provides that in case of the death of the landowner before the contract is completed the executor of his will shall be required to carry it out, there is nothing contrary to the rule against perpetuities, because the contract being one to pay for personal services must terminate at the death of the person employed if not completed earlier.

A contract between the owner of lands in a distant State, the title to some of which is incumbered, to pay for the services of a citizen of that State in clearing the title to the lands and disposing of them, which expressly provides that in case of the death of the landowner before the contract is completed the executor of his will shall be required to carry it out, is not invalid on the ground that it unreasonably and unlawfully interferes with the settlement of the landowner's estate, it being within the power of a testator to provide for a disposition or use of his property after his death which will prevent the final settlement of his estate for a long time.

If the owner of lands in a distant State, the title to some of which is incumbered, enters into a contract under seal with a citizen of that State to pay him for his

services in clearing the title to the lands and disposing of them, which expressly provides that in case of the death of the landowner before the contract is completed the executor of his will shall be required to carry it out, and the landowner upon executing the instrument further agrees by letter to execute a codicil to his will directing his executor to carry out the provisions of the contract or to have his executor follow his instructions to that effect, and if, before the services of the person employed under the contract are completed, the landowner dies without making such a codicil and the executor of his will and the beneficiaries thereunder refuse to permit the completion of the contract and assert a right to have the estate of the testator administered as if the contract had not been made, these acts constitute a breach of the contract for which the executor is liable in an action for damages.

In an action against an executor for damages for breach of a contract in writing, it appeared that by the contract sued upon the plaintiff agreed to take charge of the real estate belonging to the defendant's testator in a distant State in regard to some of which litigation was pending and to clear the title to the real estate, and the defendant's testator authorized the plaintiff to sell the real estate and after paying expenses to divide the net proceeds equally between the plaintiff and the defendant's testator, that the title to a part of the real estate had been held in the name of a brother in law of the defendant's testator, who having become involved in financial difficulties reconveyed it to the defendant's testator, that a judgment for over $13,000 had been obtained against the brother in law by one of his creditors, and a suit in equity had been brought upon this judgment to set aside the reconveyance, that the plaintiff was the administrator of the estate of the brother in law, that the plaintiff acting under the contract made a settlement of the suit by which he secured a release of the claim upon the real estate and an assignment of the judgment to the defendant's testator, that to obtain this he conveyed to the holder of the judgment lands of the defendant's testator worth about $5,000, that the judgment turned out to be worth over $12,000 as a claim against the insolvent estate of the brother in law, and that the defendant as executor collected that amount from the insolvent estate. The defendant contended that the amount of this judgment could not be included as a part of the property of his testator in the distant State in computing the damages which the plaintiff was entitled to recover. It appeared that the plaintiff in the transaction acted in good faith under the contract in the interest of the defendant's testator in perfecting his title to the lands. *Held*, that the judgment was a part of the proceeds of the lands of the defendant's testator within the meaning of the contract; that, even if there was constructive fraud on the part of the plaintiff as administrator of the estate of the brother in law in procuring the assignment of the judgment in which he had a pecuniary interest, this was *res inter alios* as to the defendant, who moreover had ratified the transaction by collecting the money on the judgment.

No exception lies to the refusal of a request for a ruling which although correct as an abstract proposition of law is immaterial and the refusal of which has not injured the excepting party.

CONTRACT by Jerome D. Mills, a citizen of the State of Minnesota, against William H. Smith of South Hadley, executor of the will of Samuel Mills Cook, late of Granby, for compensation for services performed under a contract in writing under seal dated December 29, 1900, the material portions of

which are quoted or described in the opinion, and for damages for an alleged breach of the same contract. Writ dated January 5, 1904.

In the Superior Court the case was tried before *Stevens,* J., without a jury. He found for the plaintiff in the sum of $16,501.68; and the defendant alleged exceptions, raising the questions which are stated in the opinion.

.*S. C. Darling,* (*N. P. Avery* with him,) for the defendant.

*H. P. Roberts* (of Minnesota) *& S. W. Packard* (of Illinois), (*E. L. Shaw* with them,) for the plaintiff.

·KNOWLTON, C. J. The plaintiff's claim rests upon a contract under seal, entered into between him and the defendant's testator. The recovery now sought is of damages for a breach of contract. In making the writing the parties first recited that Samuel M. Cook, the defendant's testator, then a resident of Holyoke, Massachusetts, was the owner of a large amount of real estate and some personal property in the State of Minnesota; that there was litigation pending in regard to the title to some of the real estate ; that there were unpaid taxes upon much of it; that Cook was unwilling to spend any more money in caring for his property interests in Minnesota and did not wish to be troubled about deciding questions of policy in the management of his interests in that State; that he had confidence in the judgment and business ability of the plaintiff and was desirous of inducing him to take charge of his business affairs in the State of Minnesota, and that he had already executed a general power of attorney authorizing him to make conveyances and to do other business for Cook in that State. The contract, which bore date December 29, 1900, continued as follows: "Witnesseth, that the said party of the first part, for and in consideration ·of the promises and agreements made by the party of the second part hereinafter contained, and in further consideration of the sum of one dollar in hand paid by the said Mills to the said Cook, has agreed and hereby does agree to and with the said Mills, as follows, to wit:

"The said Cook hereby authorizes and directs the said Mills to take entire charge of all the property interests of the said Cook in the State of Minnesota, of every kind and nature, whether the same be in the shape of real property or in the

shape of liens or claims upon real property of any kind or nature, and hereby authorizes the said Mills to sell and dispose of any and all his interests in Minnesota at such prices and upon such terms as may seem best to him, the said Mills; and does hereby authorize the said Mills to make any disposition of any or all of the said Minnesota property belonging to said Cook as to him may seem best, either to sell the same for cash, or to exchange the same for other property or do anything in the premises that may seem wise and prudent to the said Mills.

"It is further understood and agreed that out of the proceeds of the said property, so to be sold by the said Mills, there shall first be paid any and all expenses and disbursements incurred by the said Mills in the transaction of the said business; after the payment of the said costs and expenses the net proceeds obtained from the said property are to be divided equally between the parties to this agreement. The said Mills agrees to accept his half of the said proceeds in full settlement of all his claims for compensation for service rendered under this agreement; the said Mills also promises and agrees to give to the transaction of the business hereinbefore set forth, as much of his time as to him may seem necessary in order to properly manage the said business, and use his best judgment in the disposition of the said property and in the settlement of all matters now in dispute in relation to the same, and in the compromise and settlement of all questions that may hereafter arise in regard to the said property.

"It is further understood that the said Mills is to look to the said property for his compensation for all services rendered under this contract, and for all expenses incurred by him in the transaction of the said business.

"It is further understood and agreed that the said Cook relies entirely upon the judgment of the said Mills in the handling of said property, and the said Mills is not to be held accountable to the said Cook or to any one else in his behalf for errors in judgment in the transaction of said business, it being understood that the decision of the said Mills as to the advisability of any particular transaction in the premises shall be absolutely final and binding upon the said Cook.

"It is further understood and agreed that, in the event of the

decease of the said Cook before all of the property interests in Minnesota have been disposed of under this agreement, then and in that case the executors of the will of the said Cook shall be required to carry out the provisions of this contract and co-operate with the said Mills in the disposition of the property covered by this contract, and execute any and all papers of every kind and nature necessary in order to enable the said Mills to dispose of the property in accordance with the terms of this agreement.

" It is further understood and agreed that this contract is binding upon the heirs, executors, administrators and assigns of the respective parties hereto.

" In testimony whereof the said parties have hereunto set their names and affixed their seals the day herein first above mentioned." (Signed and sealed, etc.)

The case was referred to an auditor, who found for the plaintiff, and his report was the principal part of the evidence at the trial before the judge of the Superior Court who heard the case without a jury. Cook, the defendant's testator, died on December 2, 1901. He had signed the contract on January 19, 1901. When it was sent to him for his signature by the plaintiff, who had executed it previously, a proposed codicil to Cook's will was enclosed with it, which directed his executors to carry out all the provisions of the contract, and to that end to execute, at the plaintiff's request, any and all papers relating to any property owned by the testator at the time of his decease, in the State of Minnesota, tending to carry out the provisions of the contract. In a letter sent on the day when he signed the contract, the testator wrote to the plaintiff in part as follows: " Of course I leave the whole thing in your hands and to your judgment, and shall be content with the outcome. The agreement you forward I will sign and shortly forward, and a codicil as you suggest shall be annexed to the will, or my executor, who is my nephew and will scrupulously comply with any instructions I may give, will in good faith carry them out." The following memorandum in Cook's handwriting was found with his will, having been placed there by his direction: " Holyoke, 1, 28th, 1901. This is to certify that the agreement entered into between J. D. Mills of St. Cloud, Minn., and myself for the disposal of all my real estate

in Minnesota I wish my executor Wm. H. Smith to carry out to the letter.   S. M. Cook."

Cook died, however, without making any provision by will or codicil for carrying out the agreement after his death, and his executor and the beneficiaries under his will have declined to permit the plaintiff to complete his contract, although he was ready and willing to complete it.   At the time of Cook's death the plaintiff had done the greater part of the work required to be done in clearing up the titles to the several parcels of real estate.   He had sold lands and personal property, and had expended considerable sums in litigation, and in other ways contemplated by the contract, and had remitted to Cook $1,100 in money.   There remained to be sold, under the contract, lands to which there was a clear title, worth in excess of taxes due thereon, $18,951.08, and other lands and interests in lands of the agreed value of $1,000.   Nearly $500 was realized from insurance and from a small piece of land sold after Cook's death.

The questions argued by the defendant arise upon the refusal of the judge to make a large number of rulings requested by him.   These relate, for the most part, to the validity of the contract.   The first ruling requested by the defendant was made by the judge, to the effect that the contract by which the rights of the parties are to be determined is made up of a sealed instrument bearing date December 29, 1900, the quoted extract from the letter of Cook to Mills dated January 28, 1901, and the statement in Cook's handwriting found with the will.   The defendant cannot now complain of a construction of the evidence adopted at his request.   Indeed, if, as he now contends, the only contract is the instrument under seal, the legal effect is the same.

It was admitted by both parties, at the hearing before the auditor and at the argument in this court, that the contract did not give the plaintiff a power coupled with an interest, such that he could dispose of the property, or enforce the contract directly against the property, after Cook's death.   The plaintiff's authority under the power of attorney was, therefore, terminated by the death of the testator.   See *Hunt* v. *Rousmanier*, 8 Wheat. 174, 203 ; *Alworth* v. *Seymour*, 42 Minn. 526.

It is contended that the contract, so far as it is executory, is

non-enforceable because lacking in mutuality. We see no foundation for this contention. In the first place it is an instrument under seal, and it recites the receipt of a valuable consideration by Cook from the plaintiff. Next it purports to give valuable privileges to the plaintiff in the right to receive one half of the proceeds of the property above the expenses of clearing up and establishing the title and other expenses and disbursements in the transaction of the business, and it secures a valuable right to the testator in the agreement of the plaintiff to give his time to the transaction of the business, as much as to him may seem necessary for the proper management of it, and to use his best judgment in the disposition of the property, and in the settlement of all matters relating to it. By this agreement the plaintiff was bound to go on in good faith and exercise his best judgment in the disposition of the property. The case presents no question involving a determination of the relative value of the benefits which each party was to receive under the contract. There was complete mutuality between the parties. *Durkee* v. *Gunn*, 41 Kans. 496. *Stow* v. *Robinson*, 24 Ill. 532, 535.

The defendant argues that the contract, including the proposed codicil, was in violation of the law as to perpetuities. But the contract did not authorize any holding of the property or any restraint upon the alienation of it for a term extending beyond a life or lives in being and twenty-one years thereafter. Plainly this is one of that class of contracts in which reliance is placed upon the personal judgment and ability of him who is principally to act under it. *Brown* v. *Cushman*, 173 Mass. 368, 371. *Marvel* v. *Phillips*, 162 Mass. 399. *Stow* v. *Robinson*, 24 Ill. 532. *Janin* v. *Browne*, 59 Cal. 37. The right to dispose of the property would necessarily end with Mills's death, if it had not previously ended. He was bound to proceed under the contract within a reasonable time, in the exercise of his best judgment. Under this arrangement the property, presumably, would not be withheld from alienation for many years. He could not delegate his authority to another person, to be exercised after his death; nor could he make a contract with another person concerning the land which would be void under the rule against perpetuities. His authority was only to make legal contracts. For these reasons, apart from other consid-

erations urged in argument, the contract is not objectionable in this particular.

The contention that it unreasonably and unlawfully interferes with the settlement of the testator's estate is met in part by what we have just said. It is in the power of a testator to provide for a disposition or use of his property, after his death, which will prevent for a long time the final settlement of his estate. Thus he may direct that it be retained for a term of years in the business of a partnership. *Mason* v. *Pomeroy*, 151 Mass. 164. ' *Willis* v. *Sharp*, 113 N. Y. 586, 589, 590. *Packard* v. *Kingman*, 109 Mich. 497, 506. *Ferry* v. *Laible*, 4 Stew. (N. J.) 566. *Burwell* v. *Cawood*, 2 How. 560, 576. *Ferris* v. *Van Ingen*, 110 Ga. 102, 108. This objection to the contract is not well taken.

The defendant insists that there was no breach of the contract. It is plain that, by the terms of the writing, it was to continue in force after the death of the testator, and the codicil was to be executed to insure to the plaintiff the right to complete the disposition of the property and to have the benefits to which he was entitled. Even without such an express provision the contract probably would be held to survive the death of the testator. *Grapel* v. *Hodges*, 112 N. Y. 419. *Janin* v. *Browne*, 59 Cal. 37. *McCann* v. *Pennie*, 100 Cal. 547. *Volk* v. *Stowell*, 98 Wis. 385, 392, 393. *White* v. *Allen*, 133 Mass. 423. *Drummond* v. *Crane*, 159 Mass. 577. The neglect of the testator to make such a codicil, and the assertion by the defendant and the beneficiaries under the will of their right to have this part of the estate administered as if the contract had not been made, were a breach of the contract, which subjects the defendant as executor to an action for damages. *Hawley* v. *Smith*, 45 Ind. 183, 211. *Drummond* v. *Crane*, 159 Mass. 577. *Newton* v. *Newton*, 46 Minn. 33. *Wylie* v. *Coxe*, 15 How. 415. *Chamberlain* v. *Dunlop*, 126 N. Y. 45. Page on Wills, §§ 76, 78.

Previously to the making of the contract, the management of Cook's business in Minnesota had been in the hands of his brother in law, one Bridgman, and the title to many of the lots had been in the name of Bridgman. To protect Cook, Bridgman, in 1893, deeded to him the real estate that previously had been held in Bridgman's name. Later, Bridgman became in-

volved in financial difficulties, and a judgment for $13,604.45 was recovered against him by one Kells. Suits in equity were subsequently brought against Bridgman and Cook in different counties, upon this judgment, to set aside the conveyance of land from Bridgman to Cook, and notices of *lis pendens* were filed in several counties. Afterwards the present plaintiff, acting under the contract, made a settlement of these suits, by which he secured a release of the claim upon the lands and an assignment of the judgment to Cook. To obtain this he conveyed to the holder of the judgment a part of Cook's lands, worth about $5,000. At the time of making this arrangement to clear up the title, he supposed that there was but little property in the estate of Bridgman, who was then dead; but it subsequently turned out that the judgment was worth $12,200 as a claim against the insolvent estate of Bridgman. The facts pertaining to the transaction were communicated to Cook in his lifetime, he received the assignment of the judgment, and the defendant, as his executor, has taken measures to collect from Bridgman's estate the amount due under it. The plaintiff was administrator of this estate at the time of receiving the assignment for Cook. The defendant contends that the value of this judgment cannot be included as a part of the proceeds of Cook's property, for the purpose of determining the damages suffered by the plaintiff.

This judgment was obtained by a transfer of a part of Cook's land in Minnesota. It was a judgment which properly was payable out of Bridgman's estate. Even if it is viewed merely as an incumbrance on Cook's property which it was the duty of Bridgman's administrator to remove, when it was removed by Cook, for the protection of his property, he would be subrogated to the rights of the holder of the judgment against Bridgman's estate. The plaintiff, apparently acting in good faith in the interest of Cook under the contract, perfected for him the title to his lands, and obtained this judgment by giving for it lands worth $5,000. The judgment was a part of the proceeds of the lands within the meaning of the contract.

There is no suggestion of any fraud as between the plaintiff and the former holder of the judgment which would render the transaction voidable in favor of this holder. If, as between the

plaintiff and the estate of Bridgman, there was constructive fraud founded on the fact that the plaintiff was administrator of Bridgman's estate and was interested in the money that might be obtained upon the judgment, there was no attempt to avoid the transaction on that ground, and the defendant, who has ratified it, cannot take advantage of the fraud in this action. *Lufkin* v. *Jakeman*, 188 Mass. 528, 532. It is at least doubtful whether, upon the facts shown, anybody can legally object to the transaction. The plaintiff, as administrator of Bridgman, merely permitted a judgment against his intestate to be assigned to the purchaser of it. It is true that he acted as the agent of the purchaser in making the purchase, but there is nothing to show that he had reason to think the transaction in any way detrimental to Bridgman's estate, or directly beneficial to himself. It is true that he had a contract with the purchaser by which he had an interest in the money that might be collected on the judgment, but in this transaction he was acting primarily and directly for Cook alone. The judgment ought legally to be paid in full by the estate, and so far as appears, no facts were known to him that made it a breach of his official duty to participate in a transfer of it from one person to another, even when, through a contract with the purchaser, he would have an interest in the proceeds of it. In view of the facts that the transaction was ratified by the defendant, and that the alleged fraud was *res inter alios*, we need not further consider this defence, even if there was ground for complaint by Bridgman's creditors or next of kin.

It is to be noticed that the recovery was of damages for the breach of the contract, not of any specific sums to which the plaintiff was entitled under the contract. Some of the requests for rulings were inapplicable on this account. In the view which we have taken of the contract and the evidence, most of the requests were rightly refused. Others, which are correct as abstract propositions of law, are immaterial, and the defendant was not injured by the refusal of them.

*Exceptions overruled.*