ANNA A. BATTELLE *vs.* CITY OF WORCESTER.

SAME *vs.* SAME.

Worcester. September 28, 1920. — October 22, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Deed,* Construction. *Water Rights. Restraint on Alienation. Perpetuities, Rule against. Damages,* For property taken or damaged under statutory authority.

The owner of land bounded on the thread of a stream, across which there was a dam, built upon his land and upon the adjacent land on the other side of the thread of the stream belonging to a third person, executed and delivered in 1849 an agreement in writing, in the form of an indenture, with the owner of the dam, in which the owner of the land for himself and his heirs and assigns did "let lease and license" the owner of the dam, "his heirs and assigns to maintain said dam at its present height and to flow said land as much as said dam at its present height will flow the same," the owner of the dam, "his heirs and assigns paying" to the owner of the land $4 rent "each and every year so as" the owner of the dam his heirs and assigns "shall keep up any part of said dam;" the owner of the dam for himself, his heirs, executors, administrators, and assigns, covenanted in substance that, upon receipt of $800 "at any time" from the owner of the land or his heirs, executors, administrators or assigns, he or his heirs, executors, administrators or assigns would "relinquish all his right and title and interest in the said dam and give the same" to the landowner or his "heirs, executors, administrator or assigns forever and give good sufficient deed to effect the same." The stipulated rent was paid for over sixty years, when, under statutory authority, the land and dam were taken by a city for the purposes of its water supply. Upon a petition for the assessment of damages resulting from such taking, it was *held,* that

(1) The contract was not in violation of the rule against restraints on alienation or the rule against perpetuities;

(2) The agreement was not a personal contract between the parties;

(3) The rights of the petitioner had not been lost by laches, but still were vested in him at the time of the taking;

(4) There was incident to the land of the petitioner which was taken a right or interest under the contract which ought to be considered in estimating the fair market value of the land taken;

(5) The covenant relating to the release of the right to maintain the dam upon a payment of $800 by the owner of the land related only to that part of the dam

built upon the petitioner's land and not to the part built upon land on the other side of the thread of the stream;

(6) Damages assessed in connection with the contract should be limited to the value of the petitioner's right, which related only to that part of the dam which rested upon the petitioner's land.

Two PETITIONS, filed in the Superior Court on February 12, 1914, and August 2, 1915, for the assessment of damages for the taking by the respondent of certain land and water rights under Sts. 1900, c. 365; 1902, c. 351, for the purposes of its water supply.

The petitions were heard by *Lawton,* J., upon an agreed statement of facts. Material facts are described in the opinion. "Exhibit A," there referred to, embodied the permission given by the predecessor in title of the petitioner to the predecessor in title of the owner of the dam described in the opinion, and read as follows:

"Dover, July 18, 1838. To the Eagleville Mfg. Co., Gent: We hereby give you the privilege of bounding and butting a dam on our land in Holden adjoining land of Joseph Hubbard, we reserving the right of damage that may accrue in consequence thereof.

Signed John Battelle, Jr.
John Shumway."

"Exhibit B" read as follows:

"To whom it may concern: This may certify that we, the subscribers, Thomas J. Davis and Charles Chaffin, referees to determine and appraise damages of flowage and taking gravel in the west part of Holden on land of Messrs. Battelle and Shumway and Joseph Hubbard, by means of a certain dam erected by LeBaron Putnam and others, viz: We award to Battelle and Shumway three dollars to be paid annually forever as damages for flowing their land, and five dollars for gravel taken to build the dam; to Joseph Hubbard we award two dollars to be paid annually forever, and five dollars for gravel taken to build the dam; all of said sums we award to be paid by the mill owners below or by said LeBaron Putnam during the continuance of flowing said land.

Holden, May 8, 1848.

Thomas J. Davis,
Charles Chaffin."

"Exhibit C" was as follows:

"Know all men by these presents that we, Hannah Battelle and Abigail Shumway, both of Dover in the County of Norfolk, being owners and tenants in common of a certain tract of land and a water privilege in Holden in the County of Worcester, which land is in part overflowed by a dam erected upon said privilege with the consent of said Battelle and Shumway by LeBaron Putnam of said Holden do for ourselves and our heirs and assigns let lease and license said Putnam his heirs and assigns to maintain said dam at its present height and to flow said land as much as said dam at its present height will flow the same he the said Putnam his heirs and assigns paying said Battelle & Shumway their heirs and assigns four dollars per year rent therefor commencing on the tenth day of October in the year 1848 and paying the same sum yearly on the tenth day of October each and every year so long as the said Putnam his heirs and assigns shall keep up any part of said dam. And the said Putnam for himself and his heirs and executors, administrators, covenants with said Battelle and Shumway their heirs and assigns that he and his heirs, executors, administrator shall and will pay to said Battelle and Shumway or their executors, administrators or assigns said sum of four dollars every year as aforesaid. And said Putnam for himself, his heirs, executors, administrators, assigns further covenants with said Battelle & Shumway that he will and his heirs and assigns shall at any time when said Battelle & Shumway or their heirs, executors, administrators and (sic) assigns shall pay to him or to his heirs, executors, administrator or assigns the sum of eight hundred dollars he or his heirs, executors, administrators or assigns shall and will relinquish all his right and title and interest in the said dam and give the same up to said Battelle and Shumway or their heirs, executors, administrator or assigns forever and give good sufficient deed to effect the same.

In witness whereof we the above named parties herein named set out [our] hand and seal this ninth day of May in the year of our Lord eighteen hundred forty-nine.

In presence of             LeB. Putnam,     (seal)
     Amos W. Shumway.        Hannah Battelle,    (seal)
                             Abigail Shumway, (seal)"

The judge of the Superior Court found and ruled that the documents, Exhibits A, B and C, and agreed facts in connection therewith might "be considered on the question of damages over and above the hereinafter stipulated sum of $1,750," and, being of the opinion that such interlocutory finding and ruling ought to be determined by this court before any further proceedings in the trial court, and with the consent of the parties, reported the cases for that purpose upon the agreed statement of facts and a stipulation, in substance, that, if the exhibits above set out should be excluded from consideration in assessing the petitioner's damages, then those damages in the two petitions should be assessed at $1,750; and, if the exhibits should be taken into consideration, then the damages should be assessed by an assessor to be appointed by the Superior Court.

*F. F. Dresser,* for the petitioner.

*J. W. Mawbey,* (*F. L. Riley* with him,) for the respondent.

CROSBY, J. These are two petitions for the assessment of damages for the taking of certain land and water rights under St. 1900, c. 365, and St. 1902, c. 351. By these statutes it is provided that the city shall be subject to all the duties and liabilities set forth in St. 1871, c. 361 (St. 1900, c. 365, § 2, St. 1902, c. 351, § 3); and by St. 1871, c. 361, § 3, that the city "shall be liable to pay all damages that shall be sustained by any persons in their property, by the taking of any land, water or water-rights." The case is before us on a report of a judge of the Superior Court, an agreed statement of facts, and a stipulation.

The land taken from the petitioner is bounded on the thread of a stream known as Asnebumsket Brook. The land on the opposite side of the brook at the time of the taking was owned by one Kronoff. For about seventy-five years previous thereto, there had existed across the stream and abutting upon the lands above referred to, a dam which flowed back, upon the petitioner's land and the Kronoff land, the waters of the brook and created a reservoir known as "Pine Hill Reservoir." The dam was erected between 1838 and 1848 by LeBaron Putnam and others, who were owners of a mill on the stream below.

In 1838 John Battelle, Jr., and John Shumway were the owners of the land which at the time of the taking belonged to the petitioner; Joseph Hubbard was the predecessor in title of Kronoff;

and the Eagleville Manufacturing Company was the predecessor in title of LeBaron Putnam. Battelle and Shumway permitted the Eagleville Manufacturing Company to erect a dam, and referees afterwards made an award of damages to the landowners.

On May 9, 1849, Putnam, then owner of the mill, and Hannah Battelle and Abigail Shumway, the owners of the land of the petitioner taken by the city, entered into an agreement, a copy of which is made a part of the record and is marked "Exhibit C."

From the date of the agreement until the takings, the dam and reservoir were controlled by and for the benefit of Putnam and his successors in the ownership of the mills below; and they annually paid to Hannah Battelle and Abigail Shumway and to their successors in ownership $4 per annum, and such payments were regularly made to the petitioner until the taking in 1915. At no time did the petitioner or her predecessors in title pay or offer to pay to Putnam or his successors in title $800 as provided in the agreement; and there is no evidence of a similar agreement having been made between Putnam and the predecessors in title of Kronoff.

The parties have agreed that the petitioner's damages by reason of the taking amount to $1,750 without reference to the effect of the instruments set forth in exhibits A, B and C, and the question is, whether as matter of law the effect of those instruments shall be considered as an element of damages in addition to the sum of $1,750.

It is plain that if, upon the evidence, the mill owners had as against the petitioner an irrevocable right to maintain the dam and reservoir, then the petitioner's damages are limited to $1,750. If, on the other hand, as matter of law from the documents above referred to, the mill owners did not have an irrevocable right to maintain the dam as against the petitioner and she is deprived of a valuable property right or interest in her land by the takings, then she is entitled to recover whatever damages she may have sustained in addition to $1,750.

The recent decision in *Kronoff* v. *Worcester*, 234 Mass. 254, is not decisive of the rights of the petitioner. There was no evidence in that case of a similar agreement having been made between Putnam or his successors in title and the predecessors in

title of Kronoff. Upon that agreement the contention of this petitioner is largely founded.

It is plain that the agreement is something more than a mere license; it is in the form of an indenture, is under seal and binds the parties and their respective heirs and assigns. The rights created could be terminated by either party at any time in accordance with the terms of the agreement, and there is nothing in its provisions that imposes any restraint upon alienation by the owner of the land. The rule against perpetuities is not violated. *Mills* v. *Smith*, 193 Mass. 11, 17. The case of *Eastman Marble Co.* v. *Vermont Marble Co. ante*, 138, is distinguishable from the case at bar.

The agreement was not intended merely as a personal contract between the parties. On the contrary the heirs and assigns of each succeed with the estate to the same rights and liabilities that their predecessors in title had, and the covenants run with the land. *Morse* v. *Aldrich*, 19 Pick. 449. *Savage* v. *Mason*, 3 Cush. 500. *Bronson* v. *Coffin*, 108 Mass. 175. *King* v. *Wight*, 155 Mass. 444. *Whittenton Manuf. Co.* v. *Staples*, 164 Mass. 319, 327. The rights of the petitioner to the benefit of the covenants have not been lost by laches, but were vested in her at the time of the takings by the city.

It follows from what has been said that at the time the land was taken there was incident to it a right or interest under the agreement which ought to be considered in estimating the fair market value of the land taken, and which might enhance such value above the sum of $1,750. That right arises by reason of the terms of the agreement by which the petitioner could at any time terminate it and extinguish the claim upon her land by the payment of $800; Putnam and his heirs and assigns covenant that upon such payment he and they "will relinquish all his right and title and interest in the said dam and give the same up to said Battelle and Shumway or their heirs, executors, administrator or assigns forever and give good sufficient deed to effect the same."

This covenant amounts to an agreement on the part of Putnam and his heirs and assigns to release their right, title and interest in that portion of the dam built on the land of the owner, and to release the right of Putnam to maintain the dam; it cannot properly be construed as a covenant to release any right in the dam

standing on the Kronoff land, or to release a right there to maintain the dam.  In other words, we construe this part of the instrument as an agreement to release only the rights therein acquired by Putnam to maintain the dam on the land now owned by the petitioner.

It follows that an assessment of the petitioner's damages in this connection is limited by the covenant to the value of the right relating to a release of that part of the dam which rested on her land; she is not entitled to the value of any flowage rights that existed from the maintenance of the entire dam.  As the land was taken for a public use, the city was not bound to pay by way of compensation more than its entire value as a whole.  *Burt v. Merchants' Ins. Co.* 115 Mass. 1.

The facts in this case distinguish it from *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 209 Mass. 298, where it was held that an option given to the lessee to purchase the estate taken and the exercise of such an option would secure "not an extension of the leasehold estate but a new estate of a different kind.  The lessee's rights under such an option are rights which lie in contract and do not create in the lessee any estate in the land," but that after the taking, although the lessee can no longer at his election buy the land, "he can at his election buy the fund into which in equity the land has been converted by the exercise of the power of eminent domain."

In the case at bar the petitioner could terminate the rights acquired by Putnam and his heirs and assigns.  This was not a right to acquire a new estate of a different kind, and there is no fund into which the property affected by her right has been or can be converted.  The petitioner is, therefore, without any remedy unless she can secure the value of the right of property in question in this proceeding.

We are of opinion that as matter of law the effect of the documents, Exhibits A, B and C, properly construed should be considered as an element of damages suffered by the petitioner by reason of the takings by the city, in addition to the sum of $1,750; and that in accordance with the stipulation of the parties the total amount of damages to be awarded should be determined by an assessor to be appointed by the Superior Court, his finding of fact to be final.

*So ordered.*