**In re Arthur CLOUTIER, Debtor.**

**Raymond Joseph MYERS, Administrator of the Estate of Virginia Mary Ploof, a/k/a Virginia Mary Myers, and a/k/a Virginia M. Ploof, Plaintiff,**

v.

**Arthur CLOUTIER, Defendant.**

**Bankruptcy No. 81–08126–HL.**
**Adv. No. A81–1027.**

United States Bankruptcy Court,
D. Massachusetts.

March 19, 1982.

Aaron A. Gilman, Asoian & Tully, Andover, Mass., for plaintiff.

John Kriegel, Law Offices of Anthony R. DiFruscia, Lawrence, Mass., for defendant/debtor.

Joan Feeney, Feeney & Freeley, Boston, Mass., Trustee.

## MEMORANDUM ON DISCHARGEABILITY OF DEBT

HAROLD LAVIEN, Bankruptcy Judge.

This proceeding seeks to have the claim of the Plaintiff determined to be non-dischargeable under § 523(a)(2) and (4). Plaintiff is the Administrator of the Estate of Virginia Mary Ploof. Plaintiff claims that on or about July 12, 1977 the Defendant/Debtor, Arthur Cloutier, with the intent to deceive and in fraud of the Plaintiff, wrongfully converted to his own use money on deposit in the Defendant's name at the Franco-American Credit Union. On November 17, 1980, Plaintiff recovered judgment against the Debtor in the Massachusetts District Court, Essex Division in the sum of $15,661.45. The Debtor acknowledged that Plaintiff had obtained a judgment but states that he allowed the Plain-

---

tiff to obtain the judgment because he believed that he no longer had any assets against which the Plaintiff could recover[1] and he felt he could not bear the costs of defending the action and that, in any event, he would be able to be relieved of the state court judgment in bankruptcy.

An evidentiary hearing was held on February 18, 1982, at which I find the following facts. The Debtor met Plaintiff's decedent in 1967 or 1968 and they lived together up until Virginia Ploof's death on July 5, 1977. Mr. Cloutier had been banking with the Amesbury Franco-American Credit Union (Credit Union) since 1958 where he had a close personal relationship with the President, Mr. Gonthier, a former high school classmate. In 1974, an account was also opened in the name of Virginia M. Ploof. In 1976, the account in the name of Arthur Cloutier was closed out and the funds transferred to Virginia Ploof's account which was now made a joint account with Arthur Cloutier. On May 23, 1977, a new account was opened in just Virginia Ploof's name and the $9,205.77 was transferred from the joint account which remained open with a small balance and was changed to Arthur Cloutier's individual account.

There is some conflict in the testimony, but the bank President testified, and I so find, that when Arthur Cloutier told him he wanted to put all of the funds in an account for Virginia Ploof because he was about to undergo serious surgery, the President asked Virginia to leave them so that they could talk in private and prevailed on Arthur Cloutier to, at least, retain a power of attorney, and that was done. Arthur Cloutier conceded that he intended to accede to Virginia Ploof's request and place all of these funds in her name. This bank account is the subject of the Plaintiff's claim. Virginia Ploof died on July 5, 1977. On July 12, 1977, Arthur Cloutier went to the bank and without any discussion with his good friend and confidant, the bank President, who would have known of Virginia Ploof's death and, therefore, the termination of the power, used the power of attorney to withdraw the $9,205.77 from the bank.

Mr. Cloutier testified that while he and Virginia Ploof lived together, they both worked regularly and pooled their funds which were deposited to the various bank accounts. Mr. Cloutier could offer no evidence as to who contributed how much except to state that though they each earned minimum wage, he made more money than her. Even though they lived in his house, he could not say whether he spent more or saved more. He also testified that on two occasions, he withdrew $400.00 and $500.00 respectively, and gave the money to Virginia Ploof. He testified that he thought the $900.00 represented her share of the account but offered no basis for that judgment and, in fact, his admission that Virginia wanted the account in her name would seem to indicate the contrary. Finally, Mr. Cloutier stated that after he withdrew the money, he gave it to his son. Around the same time, he also gave the house he owned to his son.

On July 12, 1977, the day Mr. Cloutier used the power of attorney to remove the money from the account, he knew that Virginia Ploof was dead, yet he did not seek the advice of Mr. Gonthier nor, apparently, anyone else before removing the money.[2]

Plaintiff having already obtained a judgment in state court, this court need not consider the proper allocation of ownership in the bank accounts. The only determination to be made by this court is whether the state court judgment is dischargeable.

■ The power of attorney created a principal-agency relationship. The principal-agent relationship is terminated by the death of either party. *See Witherington v. Nickerson*, 256 Mass. 351, 152 N.E. 707 (1926); *Brown v. Cushman*, 173 Mass. 368, 53 N.E. 860 (1899). In fact, the Massachusetts Legislature has provided one excep-

---

1. The funds and his mortgage free home having been transferred to his son.

2. An attorney was consulted, however, the Debtor claimed his privilege as to the subject of that discussion.

tion to this rule specifically relating to a power of attorney. Mass.Gen.Laws c. 201, § 50 (1978), provides that death, mental illness or other disability recognized under the General Laws, of the principal who has executed a power of attorney in writing shall not revoke nor terminate the agency as to the attorney in fact, agent or other person who, without knowledge of the death, mental illness or other disability of the principal, shall act in good faith under the power of attorney or agency. That saving provision does not help this Debtor because the opposite situation is true in this case. Virginia Ploof lived with Mr. Cloutier. He knew of Virginia Ploof's death when he used the power of attorney. Apparently, it was the fact of her death which caused him to remove the money. He exercised the power only seven days after she had died. Additionally, although he had consulted with Mr. Gonthier upon the opening of the bank account and it was Mr. Gonthier who explained the power of attorney and urged its adoption, the Debtor neither consulted nor advised his friend that he was about to use the power to withdraw the funds, presumably, because Mr. Gonthier being aware of Virginia Ploof's death, would have told him that the power was no longer valid. Instead, unlike the Debtor's usual activities with the bank, he went directly to one of the tellers who would be less likely to know.

On the evidence presented, the Court finds that Mr. Cloutier deliberately made a false representation to obtain the money from the bank account, namely that he was attorney under a valid power. Alternatively, the deliberate use of his expired power to appropriate to his own use Virginia Ploof's fund was a defalcation while acting in a fiduciary capacity under § 523(a)(4). Under § 523(a)(2)(A) and § 523(a)(4), the Plaintiff's state court judgment is found to be a debt which should not be discharged.