ALLEN H. STEM, Individually and as Surviving Partner of the Firm of REED & STEM, Respondent, v. WHITNEY WARREN et al., Composing the Firm of WARREN & WETMORE, Appellants, and WILLIAM J. REED, as Executor of CHARLES A. REED, Deceased, Respondent.

Partnership — agreement between two firms of architects to design and supervise construction of buildings for a railroad company, a certain member of one of the firms to be executive head — contract with railroad company in pursuance of such agreement — cancellation of contract by railroad company upon death of executive head of associated architects — right of surviving partners of deceased executive head to accounting and division of commissions earned under contract with railroad company.

1. A contract of partnership is dissolved by the death of one of the parties, whether entered into for a fixed time or not, and after his death the former partner cannot bind the estate of the decedent by new contracts; and although the partnership be expressly extended to executors, they could not be compelled to carry it on, and would be entitled to a dissolution and an account of the assets, subject to the liabilities of the firm incurred up to the time of dissolution.

2. Two firms of architects, preliminary to a contract with a railroad company for services in designing and constructing a railroad terminal station and buildings connected therewith, entered into an agreement that they would render the services and divide the compensation as firms and not as individuals. They also agreed that a member of the first contracting firm should be the executive head of the work. Subsequent to this agreement and in pursuance thereof said firms of architects entered into a contract with the railroad company for doing the work for which the company agreed to pay certain commissions on the actual final costs of the completed buildings, and in which contract the company reserved the right to terminate the employment at any time. Under this contract the work was carried on until the death of the executive head of the associated architects. After his death and upon solicitation of a member of the second firm of the associated architects, the railroad company terminated the then existing contract and made a contract with the last mentioned firm of architects to complete the architectural work for the railroad company. The plaintiff, who is the surviving member of the firm to which the executive head of the associated architects belonged,

seeks in this action to recover from the other firm the proportionate amount that would have been received by his firm if the original contract had been carried out, also to recover for commisions earned by reason of the construction of a hotel built by the railroad company, for which preliminary plans had been prepared, although the work was not assigned until after the death of the executive head of the associated architects. *Held*, that, although the death of the executive head terminated the partnership between the firms, it was the duty of the survivors of the firms to take possession of the assets, perform the contract, extinguish the liabilities and close its business for the interest of all parties concerned, and the representatives of the deceased executive are entitled to share in the profits of all unfinished business though subsequently completed. *Held, further*, that although the preliminary plans for the proposed hotel had been prepared by the associated architects before the termination of the contract by the railroad company a " reasonable expectation " of securing a contract for the construction of the hotel was not an asset of the associated architects and hence the plaintiff is only entitled to an accounting and division of the commissions on the preliminary plans of the hotel.

*Stem* v. *Warren*, 185 App. Div. 823, modified.

(Argued October 8, 1919; decided January 13, 1920.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 10, 1919, modifying and affirming as modified an interlocutory judgment of Special Term directing an accounting.

The nature of the action, the facts, so far as material, and the questions certified are stated in the opinion.

*John G. Milburn, Walter F. Taylor, Edwin De T. Bechtel* and *Gerald Hull Gray* for appellants. The agreement between the associated architects was terminated by the death of Charles A. Reed. (3 Kent's Com. [10th ed.] 65; *Stewart* v. *Robinson*, 115 N. Y. 328; *Pemberton* v. *Hinchman*, 78 N. J. Eq. 270; *Hubert* v. *Aitkin*, 96 App. Div. 270; *Kennedy* v. *Porter*, 109 N. Y. 526; *Stewart* v. *Robinson*, 115 N. Y. 328; *Pemberton* v. *Oakes*, 6 L. T. Ch. 35; *Andrews* v. *Stinson*, 254 Ill. 111; *Hornaday*

v. *Cowgill,* 54 Ind. App. 631; *Insley* v. *Shire,* 54 Kan. 793; *Mattison* v. *Farnham,* 44 Minn. 95; *McGrath* v. *Cowen,* 57 Ohio St. 385; *Wilcox* v. *Derickson,* 168 Penn. St. 331; *Burwell* v. *Mandeville,* 2 How. 560.) The agreement of the associated architects with the railroad company was terminated by the death of Reed and the termination of the partnership. (*Martine* v. *Int. Life Ins. Society,* 53 N. Y. 339; *Sargent* v. *McLeod,* 209 N. Y. 360; *Spalding* v. *Rosa,* 71 N. Y. 40; *Mason* v. *Secor,* 76 Hun 178; *Greenburg* v. *Early,* 4 Misc. Rep. 99; *Baxter* v. *Billings,* 83 Fed. Rep. 790; *Lacy* v. *Getman,* 119 N. Y. 109.) The firm of Warren & Wetmore is not to be held accountable to the plaintiff in this action or to Reed's estate for the profits made out of the completion of work unfinished at Mr. Reed's death. (*Williams* v. *Wheldon,* 109 N. Y. 332; *Costello* v. *Costello,* 209 N. Y. 252; *Martine* v. *Int. Life Ins. Socy.,* 53 N. Y. 339; *Spalding* v. *Rosa,* 71 N. Y. 40; *Justice* v. *Lairy,* 19 Ind. App. 272; *Lafferty* v. *Lafferty,* 174 Penn. St. 536; *Rice* v. *Angell,* 73 Tex. 350.)

*Harold Swain* for plaintiff, respondent. It is the duty of a surviving partner of a firm to complete its unfinished business, performing its contracts and closing up its business in the manner most advantageous to the interests of all the parties concerned. (Gilmore on Part. §§ 353, 354; *Murray* v. *Fox,* 39 Hun, 108; *Nehrboss* v. *Bliss,* 88 N. Y. 600; *Castle* v. *Marks,* 50 App. Div. 320; *King* v. *Leighton,* 100 N. Y. 386; *Kennedy* v. *Porter,* 109 N. Y. 526.) In completing the firm's unfinished business, not only is the surviving partner precluded from making an individual profit at the expense of the firm, but upon him is imposed the duty of completion of the unfinished business without personal recompense. (*Denver* v. *Roane,* 99 U. S. 355; *Consaul* v. *Cummings,* 222 U. S. 262.) A partner cannot extinguish a contract belonging to the partnership by the substitution of a new contract relating to the same subject-matter, in the profits of which he alone is to participate.

In settling the accounts, such a new or substituted contract must be regarded as only a modification of the former contract, and the partner must account for the profits realized from the new or substituted contract. (*Little* v. *Caldwell*, 101 Cal. 553; *Andrews* v. *Haas*, 214 N. Y. 255; *Martin* v. *Camp*, 219 N. Y. 170; *Johnson* v. *Ravitch*, 113 App. Div. 810; *Tenney* v. *Berger*, 93 N. Y. 524; *Castle* v. *Marks*, 50 App. Div. 320; *Mitchell* v. *Reed*, 61 N. Y. 123; *Holbridge* v. *Gillespie*, 2 Johns. Ch. 30; *Phyfe* v. *Wardell*, 5 Paige, 268; *Clegg* v. *Edmondson*, 8 DeG., M. & G. 787; *Struthers* v. *Pearse*, 51 N. Y. 537; *Clegg* v. *Fishwick*, 1 McN. & G. 294; *Featherstonhough* v. *Fenwick*, 17 Ves. 298; *Spears* v. *Willis*, 151 N. Y. 443.) The agreement between the associated architects was not terminated by the death of Charles A. Reed. (Parsons on Part. [4th ed.] 432; *King* v. *Leighton*, 100 N. Y. 386.) In determining whether the defendants are to be held accountable for the profits made out of the prosecution of the joint enterprise, consideration should be given to the fact that the superseding contract, by its terms, placed the defendants in a position where their individual interests conflicted with their trust duties as surviving partners. (*Harrington* v. *Erie Co. Savings Bank*, 101 N. Y. 257; Parsons on Part. [4th ed.] 436; *Pyle* v. *Pyle*, 137 App. Div. 568; 199 N. Y. 538.) The relations of the parties with reference to the Hotel Biltmore were such that the defendants should be held accountable at least to the extent directed by the Appellate Division. (*Consaul* v. *Cummings*, 222 U. S. 262; *Marston* v. *Gould*, 69 N. Y. 220.)

*Arthur I. Strang* and *Clinton T. Taylor* for defendant, respondent. The agreement between the associated architects was not terminated by the death of Charles A. Reed. (*Matter of Marx*, 106 App. Div. 212.) The agreement between the railroad company and the associated architects expressly provides for the appointment of

a successor in case of Mr. Reed's death. The railroad company had all the protection it needed by its distinct reservation of the right to cancel the contract at any time with or without cause. His death would be a cause for cancellation but did not of itself cancel the agreement. (*Lorillard* v. *Clyde,* 142 N. Y. 456; *Sargent* v. *McLeod,* 209 N. Y. 364.) The firm of Warren & Wetmore is accountable for the profits made out of the joint enterprise in so far as it related to any unfinished work which had been assigned to them prior to the death of Charles A. Reed. (*Selwyn & Co.* v. *Waller,* 212 N. Y. 507; *Kennedy* v. *Porter,* 109 N. Y. 526; *Castle* v. *Marx,* 50 App. Div. 320; *Griswold* v. *Waddington,* 16 Johns. 438; *Little* v. *Caldwell,* 101 Cal. 553; *United States* v. *U. S. Fidelity & Guaranty Co.,* 139 App. Div. 262; *Salisbury* v. *Brisbane,* 61 N. Y. 617; *Mitchell* v. *Reed,* 61 N. Y. 123; *Denver* v. *Roane,* 99 U. S. 355; *Consaul* v. *Cummings,* 222 U. S. 262; *Hasbrouck* v. *Marks,* 58 App. Div. 33; *Spiess* v. *Rosswog,* 63 How. Pr. 401; 96 N. Y. 651; *Tolen* v. *Carr,* 12 Daly, 520; *Spears* v. *Willis,* 69 Hun, 408; 151 N. Y. 443; *King* v. *Leighton,* 100 N. Y. 386.)

HOGAN, J. In the year 1902 the New York Central and Hudson River Railroad Company contemplated a proposed change in motive power from steam to electricity, the erection of a new terminal station and various other buildings in connection therewith in the city of New York.

The firms of Reed & Stem and Warren & Wetmore, architects, on February 8th, 1904, preliminary to a contract made with the New York Central railroad entered into an agreement which recited in substance that it was contemplated that the firms of Reed & Stem and Warren & Wetmore would secure a contract for architectural services in the construction of the Grand Central Station and buildings in connection therewith; that the firms named should join as associates for the purpose of

completing plans and supervising the construction of said station and buildings in connection therewith; to share and share alike as firms and not as individuals the profits and losses; to devote their joint labor and talent to the work, properly to perform the same and to be jointly responsible to the railroad company for the proper and satisfactory carrying out of said work. The agreement also provided:

" Mr. Charles A. Reed, of the firm of Reed & Stem, is hereby named and mutually accepted as the executive head of the work. He shall have control of the work, and may hire and discharge all clerks, draftsmen and employees of the Association; and each of the members of the firms, parties hereto, will, to the best of his ability carry out the directions of said executive head. In event of a vacancy in the said position of executive head by resignation or otherwise, or upon the written request of the Railroad Company for a change in said executive head, the said Railroad Company shall have the right to determine, from time to time, as it may choose, which member of the firms, parties hereto, shall be the executive head, and the parties hereto are to abide by such determination.

" The executive head shall have entire control of the administration of the offices and affairs of the Association and shall be the Treasurer thereof."

On the same day a contract was entered into between the railroad company and the associated architects reciting the association of the firms named and agreement upon their part to jointly act as architects for the railroad company, to devote their joint labor and talent to the work which might be intrusted to them in such manner and to such extent as to adequately and properly perform all the work, and the said firms did covenant and agree to be jointly responsible to the railroad company for the proper and satisfactory performance of all the architectural work therein provided for. The division of com-

pensation was left as a matter of agreement between the architects. The fourth paragraph of the agreement reads as follows:

" It is hereby covenanted and agreed by and between all the parties hereto that the said Charles A. Reed shall be, and he is hereby named and accepted by all the parties hereto as the executive head of the Architects. As between the railroad company and all contractors of the railroad company, the said Charles A. Reed and his successor or successors as such executive head, shall be the agent and representative of the architects in all matters provided for in this agreement. In case of the death, or in case of the resignation of the said Charles A. Reed, his successor or successors as such executive head, or in case the railroad company shall at any time be dissatisfied with said Charles A. Reed, his successor or successors as such executive head, the Railroad Company shall have the right to, and may at any time, and from time to time designate in writing which one of the architects shall be the executive head. Such designation in writing, delivered to any one of the architects shall be binding and conclusive upon all the parties hereto."

The railroad company covenanted to pay the following percentages on the actual final costs of the completed buildings: For preliminary plans, etc., 1%; for working plans, 2%; for supervision, 1%; a total of 4%.

By the sixth provision of the agreement the railroad company reserved the right which was agreed to by the associates to terminate the employment upon notice in writing. Then followed five several provisions as to the amount to be paid in certain contingencies in the event of a termination by the railroad company.

After the execution of the contract, the associated architects opened offices devoted exclusively to the work contemplated in the contract, and from the date of the contract, February 8th, 1904, to the date of the death of Mr. Reed, November 12th, 1911, the associated architects

planned and supervised the construction of numerous buildings in connection with the Grand Central Station. Payment for services in a substantial sum was made to them for such services up to December 31st, 1911, and no controversy arises as to the earnings of the associated architects prior to that time.

Immediately following the death of Mr. Reed, to wit, on November 15th, 1911, Mr. Wetmore addressed a communication to Mr. Newman, the executive head of the Grand Central Terminal improvements, inclosing a proposed contract in substance the same as the contract hereinbefore referred to except that Warren & Wetmore. were named as architects thereunder, and in the same letter called attention to the sixth clause of the earlier contract as to the right of the railroad company to terminate the same, suggesting that the existing contract be terminated as of November 15th.

The trial justice found as matter of fact that the letter of Mr. Wetmore was written without any suggestion on the part of the railroad company and without the knowledge or consent of plaintiff, the surviving partner of the firm of Reed & Stem, or any representative of the estate of Mr. Reed, and as a conclusion of law that the conduct of defendants was a breach of the trust incident to the partnership relation between the parties. Thereafter Mr. Newman, acting for the railroad company, gave notice of the cancellation of the existing contract under which the associated architects had acted to become effective December 31st, 1911, and a new contract was on December 19th, 1911, made between the railroad company and Warren & Wetmore to complete the architectural work.

The plaintiff individually and as surviving partner of the firm of Reed & Stem seeks in this action to recover from the firm of Warren & Wetmore the proportionate amount that would have been received by the firm of Reed & Stem if the original contract had been carried out,

35

also to recover for commissions earned upon the construction of the Biltmore Hotel.

Four questions have been certified to this court by the Appellate Division, namely:

" 1. Was the agreement between the associated architects terminated by the death of Charles A. Reed?

" 2. By reason thereof was the obligation of the joint adventurers to the railroad company canceled?

" 3. Are the firm of Warren & Wetmore to be held accountable to the plaintiff in this action for the profits made out of the prosecution of the joint enterprise, in so far as it related to unfinished work which had been assigned to them prior to the death of Charles A. Reed?

" 4. Are the firm of Warren & Wetmore to be held accountable to the plaintiff in this action to the extent of three per cent or any other portion of the cost of the Biltmore Hotel? "

The first question certified involves the status of the joint adventurers and a determination of the legal relations existing between the parties upon the death of Mr. Reed.

" It is a general rule that a contract of partnership is dissolved by the death of one of the parties, whether entered into for a fixed time or not, and that after his death the former partner cannot bind the estate of the decedent by new contracts; and although the partnership be expressly extended to executors, they could not be compelled to carry it on, and would be entitled to a dissolution and an account of the assets, subject to the liabilities of the firm incurred up to the time of dissolution." (*Stewart* v. *Robinson,* 115 N. Y. 328, 333.)

By reason of the death of Mr. Reed, the partnership or joint venture between the firms of Reed & Stem and Warren & Wetmore was dissolved. The assets of such partnership became immediately vested in the survivors for the purpose of adjustment of the partnership affairs. (*Williams* v. *Whedon,* 109 N. Y. 333; *Costello* v. *Costello,* 209 N. Y. 252.) The most valuable asset of such part-

nership was the contract between it and the railroad company. By the terms of such contract and the agreement between the associated architects the intention of the parties is manifest that the contract was to be performed notwithstanding the death of Mr. Reed if such event should occur. Upon the death of Mr. Reed it was the duty of the survivors of the firms to take possession of the firm's assets, perform the contract, extinguish the firm's liabilities, and close its business for the interest of all parties concerned, and the representatives of Reed were entitled to share in the profits of all unfinished business though subsequently completed. (*King* v. *Leighton,* 100 N. Y. 386, 393.)

The second question, in view of the conclusion we have reached upon the first question, must be answered in the negative. The general rule is that upon the death of one of several joint contractors before complete performance of the contract, the survivors are bound by the obligations of the contract and entitled to its benefits (*Babcock* v. *Farwell,* 245 Ill. 14), and as heretofore indicated the contract and agreement contemplated that the survivor should carry out the same with the railroad company.

The conclusions reached in what has been said with reference to questions numbered one and two result in a determination that the firm of Warren & Wetmore are to be held accountable to the plaintiff in this action for the profits made out of the prosecution of the joint enterprise in so far as it related to unfinished work which had been assigned to them prior to the death of Charles A. Reed, and thus the answer to question number three is in the affirmative.

An answer to the fourth question as to the liability of defendants to the extent of three per cent or any other proportion of the cost of the Biltmore Hotel requires a statement of the facts bearing upon that question.

In the spring of 1910 negotiations were in progress between one Baumann and the railroad company with

reference to the construction of a hotel in connection with the terminal which had been in contemplation by the railroad company. Baumann at the outset was to contribute towards the expenses of the construction of the hotel. He had an architect who worked in conjunction with the associated architects in the preparation of tentative plans, arrangements having been made between such architects for a division of fees. Subsequently the railroad company undertook the construction of the hotel on its own account and thereafter the architect employed by Baumann ceased to have any connection with the associated architects. The associated architects during the years 1910 and 1911 prior to the death of Mr. Reed had prepared many plans and rendered a large amount of services in relation to the designing of the proposed hotel. At the time of Mr. Reed's death they had substantially completed so far as was necessary to form a basis of negotiations preliminary plans with reference to the hotel. February 12, 1912, the railroad company concluded to go ahead with the work on its own account and on the 11th day of March, 1912, it designated Warren & Wetmore to have charge of the work of preparing preliminary and working plans and specifications and supervising the construction of the hotel building. Their compensation was to be five per cent of the final cost of construction.

The preliminary plans were similar to and in many respects identical with the plans proposed by the associated architects and the plans prepared by the latter were used by the firm of Warren & Wetmore in the preparation of further plans. The hotel as finally constructed conformed substantially to the preliminary plans prepared by the associated architects prior to December 31, 1911, which date was the day of the accounting of the associated architects and was considered as equivalent to that of the death of Mr. Reed. The trial justice found that most of the basic features remained

unaltered and the changes and departures from the preliminary plans of the building as finally completed were not greater or more substantial than usual and customary.

The justice further found that one of the important assets of the associated architects at the time of the death of Mr. Reed and on December 31, 1911, was their reasonable expectation of being formally chosen as the architects for the Hotel Biltmore.

Upon the facts stated and other facts found by the trial justice, he found as matter of law that the defendants by their failure to secure for the benefit of the associated architects a continuation of the architectural work and by their competing in their individual interests for the work, which as trustees for the associated architects they might have obtained, they violated their legal obligations as surviving partners and that the contract of the railroad company with Warren & Wetmore was an asset of the associated architects and that defendants be required to account for all profits and emoluments which they made or would make in connection with work done thereon.

The Appellate Division modified the findings of fact relating to the Hotel Biltmore by adding to the findings made that defendants used the preliminary plans prepared by the associated architects, and such plans and the work done by the associated architects in producing them were of great and substantial value in the preparation of the final plans, and the work of the defendants was merely a continuation of the business that the associated architects were engaged in on December 31st, 1911; further that the supervision and construction pursuant to the plans made by the associated architects and completed by defendants had to do with the construction of the Hotel Biltmore pursuant to the terms of the contract of February 15th, 1912.

The Appellate Division modified the fourth conclusion of law by holding there should be excluded from the

accounting all sums received by the defendants Warren & Wetmore in excess of three per cent of the cost of the completed building, the supervision of the construction thereof to be excluded from the scope of the accounting and treated as in the nature of new work not in behalf of the associated architects but for the account of the defendants.

The effect of this latter modification was that whereas Warren & Wetmore were to receive five per cent upon the entire cost, two per cent was first to be deducted as properly. belonging to the defendants and three per cent to be divided between the associated architects, so that Warren & Wetmore should receive three and one-half per cent and the plaintiffs one and one-half per cent of the entire cost of the Hotel Biltmore.

The associated architects had been awarded no contract for the Hotel Biltmore at the time of the death of Mr. Reed. A " reasonable expectation " of securing a contract therefor was not an asset of the associated architects. By the terms of the contract between the railroad company and the associated architects the measure of compensation for preliminary plans was provided for at one per cent. Such preliminary plans having been made during the lifetime of Mr. Reed, under direction of the railroad company in connection with the erection of a building designated by it, were the property of the associated architects and Warren & Wetmore could not appropriate such plans, utilize the same and deprive their associates, Reed & Stem, or the plaintiff as survivor of such firm of the compensation earned by the associated architects in the preparation thereof, which was fixed under the terms of the contract between the railroad company and the associated architects at one per cent. The defendants should be required to account for the value of the preliminary plans upon the basis of the contract price thereof, to wit, one per cent; thus to the plaintiff herein one-half thereof should be awarded.

The judgment should be modified by excluding from the accounting all sums received by the defendants Warren & Wetmore for services in connection with Hotel Biltmore in excess of one per cent of the cost of the completed building, and as thus modified affirmed, without costs to either party.

Questions certified are answered as follows: Question number one in the affirmative, number two in the negative, number three in the affirmative and number four in the affirmative.

HISCOCK, Ch. J., CHASE, COLLIN, POUND and CRANE, JJ., concur; McLAUGHLIN, J., not sitting.

Judgment accordingly.