HARRY N. STEARNS & others, administrators with the will
annexed, *vs.* ALBERT H. BLEVINS & others.

Suffolk.      November 30, 1927.— March 2, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Architect.  Contract,* Construction, Termination by death, Of architect.
*Equity Jurisdiction,* Accounting.  *Good Will.*

In a suit by the administrator of the estate of an architect against a second
architect, it appeared that the owner of an apartment house designated
the two architects, who formerly had been partners, as associate archi-
tects to prepare plans and perform the necessary architectural services
therefor, and they orally agreed that their relations to each other, and
the manner and time of payments, should be governed by the schedule
of charges computed by the American Institute of Architects, and to
share in equal proportions the fees received for such services, except
that the plaintiff's intestate was to pay out of his share certain dis-
bursements for engineering services and other assistance.  When the
architects' services had reached a stage where they were entitled to two
fifths of their commission, the plaintiff's intestate died.  The defend-
ant then made a new contract with the owner for the completion of the
work.  *Held,* that

(1) The contracts between the plaintiff's intestate and the defendant,
and between them and the owner, were of a personal nature, and both
fell within the general classification in which there is an implied condi-
tion that the person to render the services shall continue to live; they
were terminated by the death of the plaintiff's intestate;

(2) The new contract by the defendant with the owner was under-
taken on his own account and not for the benefit of the estate of the
plaintiff's intestate:  there was no question of good will involved;

(3) The reasonable expectation that a permit to build would be
granted, that a contract to build would be let, and that the associate
architects would have the opportunity to complete the work which they
had begun was not, in the circumstances, an asset of the joint enter-
prise for which, upon the death of one of the associates, the survivor
was bound to account;

(4) The defendant's duty to the plaintiff was to account only for
the fair value of the work done at the time the joint undertaking was
ended by death; he was under no further liability for using in complet-
ing the work the sketches or plans made before the death of the plain-
tiff's intestate;

(5) It was proper to deduct, from the half of two fifths of the com-
mission which the plaintiff's intestate had earned at the time of his
death, the disbursements for engineering services and other assistance
which he had agreed to pay; the mere fact that a large part of the ex-

penses to be borne by him had been incurred at the time of his death did not make the accounting on the basis of commissions earned unfair or inequitable.

BILL IN EQUITY, filed in the Superior Court on May 1, 1926, and afterwards amended, for an accounting as described in the opinion.

The suit was heard by *Sisk*, J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926) to take the evidence. Material facts found by the judge are stated in the opinion. His statement of the accounting was "that Blevins and Newhall were entitled to two fifths of the total commission to be divided as arranged between Blevins and Newhall. The total cost of the addition was $407,987.20, six per cent commission on this sum being $24,479.23. Two fifths of $24,479.23 being $9,791.68, Blevins and Newhall were entitled to this sum, viz: $9,791.68; one half of this sum ($9,791.68) being $4,895.84, the share of each, $326.50 to be deducted from Newhall's share for disbursements for engineering expenses, which Newhall was to pay under his agreement with Blevins, leaving a balance of $4,569.34. I find the amount due the plaintiffs is $4,569.34 with interest from the date of filing this bill of complaint."

By order of the judge, a final decree was entered directing the defendant Blevins to pay the plaintiffs $4,866.34 without costs, and dismissing the bill as to the other defendants. The plaintiffs appealed.

*R. R. Duncan,* for the plaintiffs.

*G. K. Richardson,* (*W. E. Bennett* with him,) for the defendant Blevins.

SANDERSON, J. This is a bill for an accounting, brought by the administrators with the will annexed of Louis C. Newhall against Albert H. Blevins individually and as one of the trustees of the Arsenal Square Trust, all of whom are defendants. The trial judge made findings of fact in accordance with which a decree was entered ordering the defendant Blevins to pay the plaintiffs the sum of $4,569.34, with interest, and dismissing the bill as to the other defendants; the plaintiffs appealed. The testimony was taken in accordance with the statute.

Newhall died December 26, 1925. He was an architect with an office in Boston, and had been associated as partner with the defendant Blevins. The partnership was dissolved in 1919. About September, 1925, the defendant trustees decided to erect an addition to an apartment house in Cambridge operated by them, and at Blevins's request designated Newhall and Blevins as associate architects to prepare plans and perform the necessary architectural services therefor, their compensation to be six per cent on the total cost of construction. These architects orally agreed that their relations to each other, the manner and time of payments, should be governed by the schedule of charges computed by the American Institute of Architects, and to share in equal proportions the fees received for such services, except that Newhall was to pay out of his share certain disbursements for engineering services and other assistance. They worked together under this arrangement until a short period before Newhall's death, at which time the plans had not reached the stage of completion, but were more than preliminary sketches, drawings and specifications. Certain tentative contracts had been let on the basis of the preliminary plans, adjustments to be made subsequently with the contractors. According to the schedule of the American Institute referred to, the rule as to the division of architects' fees, the manner and time of payment, appeared to be as follows: "One fifth for the preliminary studies and plans; the next two fifths for working drawings when ready to let contracts; the final two fifths for superintendence and for details which have to be got out during the progress of the work, full size details, three quarter scale details, and all work up to the time the building is turned over to the owner."

The judge found that the trustees under their contract had the right to the joint professional skill and ability of the architects; that by reason of the death of Newhall they were deprived of his professional skill and ability; that the personal representatives of Newhall could not undertake to do his work, nor could they supply an architect to complete his share of the joint professional services which the trustees contracted for; that the agreement between the trustees

and Newhall and Blevins waŝ terminated by the death of the former, and the trustees had a right to make a contract with one or more architects to complete the work; that Blevins, by reason of his knowledge of the professional skill and ability of Newhall, made his contract with him in the light of that knowledge; that the death of Newhall terminated the contract between them; that they were not partners in this transaction, but it was a joint professional adventure and, on its termination, Blevins had the right to contract with the trustees to perform the architectural services necessary to complete the plans and supervise the construction of the proposed addition, and that such a contract was made. He also found that Blevins and Newhall were entitled to substantially two fifths of the total commissions at the time of Newhall's death, to be divided as arranged between them.

If a contract is of "such a nature as to admit of only a personal performance, or as to imply that it is to be operative only during the existence of a certain state of affairs, although not so expressed in terms, . . . the contract will be considered dissolved by death or disability, which makes the personal performance impossible, or which destroys the existence of such a state of affairs. A familiar illustration of such a contract is an agreement to paint a picture or write a book." *Brown* v. *Cushman*, 173 Mass. 368, 371. *Stewart* v. *Loring*, 5 Allen, 306. *Freeman* v. *Freeman*, 136 Mass. 260. *Barrett* v. *Towne*, 196 Mass. 487, 489. *Browne* v. *Fairhall*, 213 Mass. 290.

The contracts between Blevins and Newhall and between them and the owners were of a personal nature, and both fall within the general classification in which there is an implied condition that the person to render the services shall continue to live. *Hawkes* v. *Kehoe*, 193 Mass. 419, 423. *Stem* v. *Warren*, 227 N. Y. 538, 546. *Millar* v. *Fidelity Trust Co.* 95 N. J. Eq. 715. *Blakely* v. *Sousa*, 197 Penn. St. 305. When death comes to a party to such a contract before its complete performance, all obligations of the parties are at an end. "The misfortune which has occurred releases both parties from further performance of the contract and gives no right to either to claim damages from the other." *Hawkes*

v. *Kehoe, supra,* page 424.    *Marvel* v. *Phillips,* 162 Mass.
399.    Cases of this nature are to be distinguished from those
in which the personal services are not the controlling con-
sideration and also from those in which the parties have so
contracted that death will not terminate the contract.
*McClean* v. *Kennard,* L. R. 9 Ch. App. 336.    In *Jepson* v.
*Killian,* 151 Mass. 593, the contract, which was held not
to be terminated by death, related to making excavations
and constructing a brick conduit for a heating company.
One of the joint contractors died.    The survivors performed
the contract.    The court said at page 594: "It does not
appear that, even as between the deceased and the Heating
Company, his estate did not remain liable for the performance
of the contract.    But whether it did or not, it was liable,
so far as appears, to make good its share of any loss to the
defendants, and was entitled to share in any gain."    In
*Consaul* v. *Cummings,* 222 U. S. 262, the deceased partner
had performed his part of the joint undertaking, and the
court held that the survivor, in performing services after
the death of his associate, did only what he was expected
to do by the terms of the contract and therefore must ac-
count to the estate of his former associate.

In the case at bar we cannot say that the finding, that
Blevins, after the death of Newhall, made a contract with
the trustees to perform the necessary architectural services
to complete the plans and supervise the construction of the
building, was unjustified by the evidence, and in view of that
finding it is apparent that Blevins undertook to complete
the work on his own account and not for the benefit of New-
hall's estate.    What the rights of the parties would have
been if Blevins had completed the work without entering
into a new contract with the trustees need not be considered.
It is evident that a single joint enterprise cannot have a good
will in the sense that a partnership having an established
business may have.

The trustees had not obtained a permit to build when
Newhall died, and such a permit was refused upon the first
application.    After certain changes were made in the plans
the permit was granted in January, 1926, and the contract

for the erection of the building was made by the owners in the same month. The reasonable expectation that such a permit would be granted, that a contract to build would be let, and that the associate architects would have the opportunity to complete the work which they had begun, is not upon the facts found an asset of the joint enterprise for which, upon the death of one of the associates, the survivor is bound to account. *Stem* v. *Warren, supra,* page 550. See also *Rutan* v. *Coolidge,* 241 Mass. 584, 599. The duty of Blevins, who had assumed no larger responsibility, was to account for the fair value of the work done at the time the joint undertaking was ended by death, and when he has done this, he has so accounted to the estate of his former associate for all joint assets that he is under no further liability for using in completing the work the sketches or plans made before the death of his associate. Upon the findings the defendant owed no duty to the estate of Newhall beyond accounting to it for all that had been earned at the date of Newhall's death. There was no evidence to support the plaintiff's contention that the defendant should account for one half of the total commissions on the completed work.

The parties had agreed to the expenses which each of the joint contractors should bear, and to the division of commissions. No error appears in the division of commissions made by the court upon the basis of that agreement without reimbursing Newhall's estate for the expenses which he had incurred. Under the circumstances of the case the fact that a large part of the expenses to be borne by him had been incurred at the time of his death does not make the accounting on the basis of commissions earned unfair or inequitable.

No error of law appears in the method adopted by the court in determining the amount due the plaintiff or in any of the findings or rulings made.

*Decree affirmed with costs.*