John Byrne and Another, Copartners, Doing Business under the Firm Name and Style of Byrne & Bowman, Appellants, Respondents, *v.* Thomas F. Barrett, Respondent, Appellant.

First Department, December 14, 1934.

*Joseph L. Young* of counsel [*Leonard F. Manheim* with him on the brief; *Joseph L. Young*, attorney], for the plaintiffs.

*Frank C. Laughlin* of counsel [*Joseph W. Kirkpatrick* and *Stewart W. Bowers* with him on the brief; *Louis A. Tepper*, attorney], for the defendant.

UNTERMYER, J.   The plaintiffs are the members of a firm of real estate brokers.   The defendant is a former employee engaged by the plaintiffs in 1926 as a real estate salesman under an agreement by which he was to receive fifty per cent of any commissions earned as the result of negotiations conducted by him.   The employment was oral and was terminable at the will of either party.   There is no claim by the plaintiffs of any express agreement at that time that, if the defendant should leave their employment, he might not continue to work on pending business for his own account.   There is no claim on the part of the defendant of any express agreement made at the time of his employment, that if he should leave, he might continue to work on pending deals.

In the latter part of February, 1929, the defendant initiated negotiations for the sale or assignment to one Max Natanson of a leasehold held by the New York Trust Company, or by its subsidiary, Seven Forty-one Fifth Avenue Corporation, on property at the northeast corner of Fifth avenue and Fifty-seventh street. In this the defendant was acting as the representative of the plaintiffs and it is entirely clear that his principals, the plaintiffs, were, therefore, the parties employed as brokers in the transaction.   The employment of the plaintiffs by the New York Trust Company, however, was not an exclusive one and did not preclude the trust company from employing other brokers in relation to the disposition of the leasehold.   If several brokers were employed, as there may well have been, only that broker who was the procuring cause of any sale would, of course, become entitled to commissions.

The defendant conducted on behalf of the plaintiffs the negotiations between the trust company and Natanson for the sale of the leasehold until March 26, 1929.   Then, in consequence of a dispute concerning a transaction in no way related to the subject-matter of the present action, he severed his relations with them.   On March 25, 1929, he wrote the plaintiffs offering to resign, but stating, " I would like a release on anything that I may be working on." At the trial the defendant testified that although the plaintiffs

refused to execute such a letter of release, the condition was verbally accepted by them. The trial court has found, however, upon evidence which abundantly sustains the finding, that the plaintiffs rejected the proposed condition and that thereupon the defendant tendered, and the plaintiffs accepted, an unconditional resignation. Had the defendant been able to establish that the plaintiffs had consented that he continue to work on transactions on which he was then engaged, it would necessarily have been a complete answer to the plaintiffs' claim. Even failing in this, the situation of the parties remained unchanged by anything that occurred at the time the defendant resigned. The defendant relinquished nothing by requesting permission to do that which he had a right to do, assuming that he had that right. The plaintiffs acquired nothing by their refusal to comply with his request. Both parties may, it is true, have misconceived their rights, but such a misconception did not augment or curtail the rights of either.

After leaving the plaintiffs' employment, the defendant first informed the New York Trust Company and later Natanson that he had severed his relations with the plaintiffs and obtained from each permission to continue the negotiations in his own name. Such permission was readily given, for probably these parties were indifferent whether the negotiations were conducted by the defendant for his own account or as the plaintiffs' employee. Thereafter the defendant pursued the negotiations in his own name to a point where Natanson offered to close the deal on terms satisfactory to the trust company, and where, therefore, the trust company became liable for commissions. This occurred on April eighteenth, but on the following day the trust company refused to proceed with the deal or to recognize the defendant's right to brokerage. The defendant then began an action for commissions against the trust company, in which he eventually recovered judgment for $71,459.85.

After the defendant left the plaintiffs' employment the plaintiffs made no attempt whatever to continue the negotiations between the trust company and Natanson, as they might have done since, as already stated, they were the brokers in the deal. This probably was due to want of confidence in the success of the negotiations. When they learned of the pendency of the defendant's action against the New York Trust Company they manifested no interest whatever therein, also because, as the court below observed in its opinion, they seem to have considered the defendant's claim to be without foundation. In fact, they appear even to have co-operated with the trust company in an effort to defeat his claim. However, as soon as judgment was recovered against the trust company, this action was commenced to impress a trust upon the judgment, for

a decree " that it be adjudged and decreed that the plaintiffs are entitled to receive the amount of the judgment recovered by the said Thomas F. Barrett against the said New York Trust Company on his action for brokerage commissions as alleged herein, subject to defendant's right to receive the portion thereof from plaintiffs due him as compensation," and for an accounting.

The trial court has sustained the contention of the plaintiffs that after leaving their employment the defendant could not, without their consent, accept employment as broker in the transaction then pending between the New York Trust Company and Natanson without dividing any commissions in accordance with the original contract of employment. The court found upon sufficient evidence " that the negotiations instituted by the said defendant prior to the 26th day of March, 1929, and consummated thereafter, constituted one continuous transaction involving the assignment or sale of the said lease." There is no finding, however, and upon the evidence none would have been justified, that the deal between the trust company and Natanson had been consummated, or appeared at all to be certain of consummation, when the defendant resigned on March twenty-sixth. On the contrary, the court found as to this " that prior to March 26, 1929, the said Max N. Natanson had made an offer as to the terms of the assignment of the said lease which was not acceptable to the New York Trust Company and said Number Seven Forty-One Fifth Avenue Corporation and which was thereafter rejected by the said Number Seven Forty-One Fifth Avenue Corporation and the New York Trust Company." There is, furthermore, neither finding nor proof, nor is there any allegation in the complaint, that the defendant left the employment of the plaintiffs in bad faith and for the purpose of earning the full commission by concluding thereafter the pending deal between the New York Trust Company and Natanson. Indeed, the trial court found that the defendant resigned for reasons in no way connected with that deal. There are, it is true, findings to the effect that after the defendant left the plaintiffs' employment he willfully concealed his connection with the negotiations between the New York Trust Company and Natanson and that he was prosecuting an action for commissions against the trust company. But if the defendant had the right to act as a broker in the transaction after March twenty-sixth, even in competition with his former employers, then he was under no duty to make disclosure of that fact, especially to parties who were in the position of competitors.

The question then is whether the defendant, who in the course of his employment had conducted negotiations for the plaintiffs between the trust company and Natanson, might after leaving the

employment compete with his employers by continuing for his own account negotiations so begun. Until that time, at least, he had in all respects discharged his duty of undivided loyalty. Was he, even after all relations between him and his employers were severed, precluded from acting in competition with them in relation to business of the firm on which he had been engaged. Even as between partners and joint adventurers the duty of uncompromising loyalty, exemplified by such decisions as *Meinhard* v. *Salmon* (249 N. Y. 458) and *Mitchell* v. *Reed* (61 id. 123), terminates with the dissolution of the fiduciary relationship which brought it into operation. (*Hammond Oil Co.* v. *Standard Oil Co.*, 259 N. Y. 312, at p. 322, and authorities cited.) Certainly this must be true where the relation is that of employer and employee, as it was here (*Gordon Co., Inc.*, v. *Garcia Sugars Corp.*, 241 App. Div. 155; *Hutchinson* v. *Birdsong*, 211 id. 316; *Mariner, Inc.*, v. *Hughes*, 235 id. 143; *Byrne* v. *Blaker Advertising Agency, Inc.*, 239 id. 395), to which less drastic principles apply. (*Schantz* v. *Oakman*, 163 N. Y. 148.) What right of the plaintiffs is it then that the defendant violated or what property did he appropriate when he undertook to negotiate as broker for the trust company after March 26, 1929?

In examining that question it is to be remembered that there was nothing to prevent the plaintiffs from continuing as brokers after March twenty-sixth the negotiations which the defendant had theretofore initiated for them. With that employment the defendant did not interfere. The plaintiffs' employment not being exclusive, any other broker employed by the trust company was at liberty to conclude a deal. The defendant accordingly did not disturb by anything he did the relations existing between the trust company and the plaintiffs. What the defendant may be said to have impaired was the probability or expectation that the plaintiffs would be the brokers to conclude the deal. But such a " reasonable expectation " is not a right or asset which is entitled to protection under the circumstances here. (*Stem* v. *Warren*, 227 N. Y. 538; *Stearns* v. *Blevins*, 262 Mass. 577; 160 N. E. 417.) Otherwise, upon the dissolution of a partnership or joint adventure, or upon the termination of such an arrangement as existed here, neither party could pursue the negotiations further without accountability to the other. The effect of this would be to continue the relationship against the will of both the parties and " thus prolong by indirection its responsibilities and duties." (*Meinhard* v. *Salmon*, *supra*.) That rule seems especially applicable here, where the claim is asserted by parties who refrained from making any effort to convert the " reasonable expectation " into a reality against the party whose endeavors succeeded in causing it to fructify.

(See *Brady* v. *Powers*, 112 App. Div. 845; modfd. on other grounds, and affd., 188 N. Y. 626.) Had the defendant failed in his endeavors he would have had no right to contribution or reimbursement from the plaintiffs for the time consumed or the expense incurred in attempting to conclude the deal. The defendant, therefore, appropriated no property belonging to the plaintiffs. What he took with him were attributes which he had the right to take. He took with him his knowledge of the situation — knowledge of the requirements of the trust company and of Natanson, and no doubt other general information pertaining to the deal. This was knowledge and information which in the absence of a restrictive covenant the defendant was entitled to use for his own advantage precisely as he might have used any other information, not in the nature of a trade secret, acquired in the course of his employment, extending even to the names of customers or clients. (*Boosing* v. *Dorman*, 148 App. Div. 824; affd., 210 N. Y. 529; *Scott & Co., Inc.*, v. *Scott*, 186 App. Div. 518; *Peerless Pattern Co.* v. *Pictorial Review Co.*, 147 id. 715.) " Equity has no power to compel a man who changes employers to wipe clean the slate of his memory." (*Peerless Pattern Co.* v. *Pictorial Review Co., supra.*) And in *Gossard Co.* v. *Crosby* (132 Iowa, 155, 177; 109 N. W. 483, cited with approval in *Boosing* v. *Dorman, supra*) the court likewise said: " The employee leaving an employer's service cannot leave the experience or knowledge there acquired, and, saving the matter of trade secrets already mentioned, these are legitimate additions to her personal equipment which she has a perfect right to use for her own benefit." What the plaintiffs really complain of is that the defendant was enabled to avail himself of a connection which rendered possible more effective competition with them, if they had undertaken to compete. But there was no express covenant and, as I have said, there was none implied in the contract of employment that at its termination the defendant would not avail himself of a connection which he had established, and of information which he had acquired in the course of his employment. If the plaintiffs intended to exclude him from that advantage after he had severed his relations in good faith with the firm, they should have provided against the contingency by a suitable restrictive covenant. Of course, if either party here, realizing that the deal was about to close, had terminated the relationship in order to secure the full commission to the exclusion of the other, different considerations would apply. (*Goodman* v. *Marcol, Inc.*, 261 N. Y. 188; *Sibbald* v. *Bethlehem Iron Co.*, 83 id. 378.)

The order as resettled September 15, 1933, giving defendant leave to settle and compromise the judgment entered in his favor against

the New York Trust Company and fixing the lien of Pfeiffer & Crames, which by plaintiffs' notice of appeal herein is brought up for review, was separately appealed from and affirmed by the court by order entered November 3, 1933 (240 App. Div. 870). The appeal in so far as it seeks to review said order should be dismissed.

The order dated November 21, 1933, brought up for review on plaintiffs' appeal, directing payment of Pfeiffer & Crames' fee by the chamberlain, should be affirmed.

The judgment should be reversed, with costs to the defendant, and the complaint dismissed, with costs.

FINCH, P. J., and O'MALLEY, J., concur; MERRELL and TOWNLEY, JJ., dissent and vote for affirmance.

TOWNLEY, J. (dissenting). This action is brought by the plaintiffs, a firm of real estate brokers, against the defendant as a trustee *ex maleficio*, to impose a trust on the proceeds of a judgment procured by the defendant against the New York Trust Company.

Defendant was a duly licensed real estate salesman in the employ of the plaintiffs prior to March 26, 1929. Under his contract of employment, he was entitled to fifty per cent of the commissions resulting from the business which he brought in and negotiated to a successful conclusion. During the period of his employment, defendant Barrett heard of possible business involving property which the New York Trust Company as stockholder of Seven Forty-one Fifth Avenue Corporation wished to lease. The plaintiff partnership was employed by the corporation and the trust company as real estate brokers but not as exclusive brokers. Barrett, having found the business, conducted negotiations on behalf of plaintiffs. One Max Natanson was produced as a proposed purchaser and negotiations had reached a point at which the parties had come to a substantial agreement on all matters except the amount of free rent wh ch the trust company was to have in the building to be erected upon the leased premises. As to that Natanson had indicated his willingness to meet the terms of the trust company.

Owing to a quarrel about another transaction not related to the matter at bar, the defendant, on the 25th of March, 1929, stated to the plaintiffs that he wanted to end his service, and he wished that plaintiffs would sign an agreement waiving any rights in any commission arising out of the sale of the New York Trust Company lease. Plaintiffs refused to sign any such waiver. On the next day, March twenty-sixth, defendant resigned from plaintiffs' employ without any agreement as to his rights in pending business of the partnership. Defendant thereafter obtained a license as

a real estate broker in his own name and continued the negotiations. The trust company and the corporation closed with Natanson but later repudiated the contract.

In May, 1929, defendant instituted an action for his commission. He brought that action and recovered judgment on his own behalf as having been employed by the Seven Forty-one Fifth Avenue Corporation and the New York Trust Company. On the record at bar, the trial court did not find that either the corporation or the trust company had formally discharged plaintiffs as their brokers or had re-employed Barrett specifically in this transaction after his resignation. There is a finding that Barrett willfully concealed from plaintiffs his actions in relation to the trust company lease, after leaving plaintiffs' employ, until approximately one month prior to the trial at which his right to commissions was litigated.

In the litigation for commissions, the jury must have found that Barrett was specially hired as broker after his resignation. The jury found that Barrett had earned the commission and brought in a verdict which, with interest, amounted to nearly $80,000. This judgment was affirmed by the Appellate Division (239 App. Div. 899). While an application for leave to appeal to the Court of Appeals was pending, Barrett settled for $66,913.37. Attorney's fees of more than $26,000 were ordered paid and a sum more than sufficient to cover any claim made by the plaintiffs was ordered deposited with the city chamberlain. The issue on the trial of this action was to determine the ownership of this balance.

Defendant claims ownership of the whole amount. The reasoning by which this claim is supported may be stated as follows: An employee on resigning from his employment, in the absence of any contract to the contrary, may make use of all the information which he has acquired during the term of his employment, exclusive of trade secrets. (*Scott & Co., Inc.,* v. *Scott,* 186 App. Div. 518.) After the termination of his employment, he owes no duty to refrain from competing with his former employer as to any business in the employer's office which was still in such a stage of completion that a favorable result, from the point of view of the employer, might fairly be described as no more than a reasonable possibility or probability. The happy conclusion of negotiations between Natanson and the New York Trust Company, the defendant goes on to argue, was no more than a reasonable expectation and was, therefore, not an asset of his employer's firm for which he was required to account after exploiting it. In short, Barrett claims that after his voluntary resignation, in the absence of a finding of bad faith charging him with having deliberately left the employ so as to gain the fruits of these negotiations, he was permitted freely to compete

with his former employer on the very business which he had been previously negotiating for the employer and to keep the entire proceeds of such exploitation to himself.

The cases relied upon by the defendant to support this position are principally *Stem* v. *Warren* (227 N. Y. 538); *Stearns* v. *Blevins* (262 Mass. 577; 160 N. E. 417); *Lafferty* v. *Lafferty* (174 Penn. St. 536; 34 A. 203) and numerous other cases of similar import. It is sufficient for our purposes to discuss the situation stated in *Stem* v. *Warren (supra)*. In that case two firms of architects had agreed to become partners in soliciting business for the development of Grand Central Station and its adjacent properties. These joint enterprisers knew that the New York Central railroad was considering building the Biltmore Hotel. One of the coadventurers named Reed prepared plans which substantially were ultimately used in the erection of that building. Before any final decision to erect the building was made, Reed died. The other firm which had been associated with Reed's firm then entered into negotiations to procure the contract for erecting the hotel for itself. It succeeded in procuring this contract and the Biltmore Hotel was erected. In an action for an accounting of the profits, the Court of Appeals held that the defendant firm was under a duty to account only for its use of the plans and was under no duty to account for the profits arising out of the actual erecting of the building. The court reasoned that at the time of the dissolution of the joint venture by the death of Reed, no contract had been awarded and the joint venturers had no asset in the sense of any proprietary interest in the contract. The court said that the most that the joint venture had was a reasonable expectation of getting a contract sometime in the future and that such an expectation was not an asset for which one of the parties to the joint venture must account.

The distinction between the situation presented in *Stem* v. *Warren (supra)* and that presented by the case at bar is this: In the former case no contract existed. In the case at bar a contract of employment of the plaintiffs as brokers had actually been entered into. It is true that it was not an exclusive contract, but it was a contract which was part of the current business of the plaintiff partnership.

Under the conditions affecting Barrett's employment by the plaintiffs, even though considered strictly from the standpoint of employer and employee, Barrett could not on the termination of his employment continue negotiations with respect to matters with which he had become acquainted in the office of the plaintiffs without assuming as to them an obligation similar to the obligation imposed by law upon one joint venturer as to business and profits resulting from the continued negotiations of any phase of the joint

venture. Whatever result might be reached in a case involving the voluntary resignation of a clerk on a small salary, certainly in the case of an employee whose compensation is based on one-half the commissions earned, the analogy to a joint venture is so close as to make reasonable the application of such equitable principles as were enforced by the Court of Appeals in *Meinhard* v. *Salmon* (249 N. Y. 458).

Barrett made his contract under which he agreed to share fifty per cent with Byrne & Bowman on all contacts which he made which resulted in a real estate closing while in their employ. He did not pretend to be an independent real estate broker. He became an employee of a well-established firm which presumably gave him a status in his negotiations which he would not have had otherwise. When he left his employment the contract with the trust company was an asset of the plaintiffs' firm. It is no answer to assert the non-exclusive brokerage of plaintiffs as justification.. It is true any one else might have competed for this commission, but this defendant continued his connection with it charged with an obligation which he could not avoid by the simple expedient of terminating his employment. When he competed, he was not a newcomer. He was simply carrying to conclusion what the court has found to be one continuous negotiation. It seems too clear to necessitate further argument that by his actions in this case, Barrett took advantage of his position and attempted to misappropriate the proceeds of business which he had previously brought to the plaintiffs in the course of his duty as employee to solicit business. Accordingly, the judgment in so far as appealed from by the defendant should be affirmed.

On the cross-appeal, plaintiffs contend that they are entitled to one-half of the total amount of the judgment recovered for brokerage commissions after deducting reasonable counsel fees. They say (1) that the plaintiffs' recovery cannot be lessened by the fact that the defendant undertook to settle the judgment which he had recovered for an amount less than its face value without plaintiffs' consent, and (2) that plaintiffs' recovery cannot be lessened by any payment to counsel over and above reasonable counsel fees.

The judgment against the New York Trust Company as above stated was settled for $66,913.37. Plaintiffs were not party to, nor did they consent to, this settlement. In order to consummate it without their consent, defendant agreed to deposit in court one-half of the original judgment. Upon this condition defendant was given leave to settle and compromise the action. The attorneys' fees were fixed at Special Term on the basis of the reasonable value of the services. That order was affirmed by this court (240 App. Div.

870). We deem any further question of the reasonableness of the fees as an attempt to relitigate an already adjudicated question.

Barrett recovered judgment against the New York Trust Company on instructions to the jury which necessitated a finding that he had been re-employed as the sole broker by the New York Trust Company. Byrne and Bowman were not parties to that action and were not bound by the facts necessarily found to support the judgment. They have, however, adopted the judgment to the extent of claiming a one-half interest. We think that whether there was or was not a rehiring by the New York Trust Company, plaintiffs are entitled to an accounting for one-half the proceeds in accordance with their original contract with Barrett. We also think plaintiffs are bound by the settlement which Barrett entered into with the New York Trust Company.

Barrett's position in this litigation may be analyzed as that of an attorney-in-fact empowered by the plaintiffs to conduct a suit for them, a suit, incidentally, in which he had a half interest. In view of the fact that Barrett had ceased to be an employee at the time he closed the deal, he might also be regarded as in the legal status of a joint venturer with the plaintiffs. In that view when he prosecuted the action, his position would be that of a managing partner in the venture and he would have an agency coupled with an interest in the proceeds to prosecute the judgment to a successful termination. If, however, Barrett's position in this litigation be deemed to be that of an employee wrongfully appropriating his employer's assets, the conduct of the plaintiffs in not interfering in the law suit until after its successful conclusion must be interpreted as a ratification of Barrett's authority to prosecute their claim on their behalf as attorney-in-fact. Under that theory, also, Barrett's status in relation to the plaintiffs is that of an agent with an interest.

The only question that arises is whether plaintiffs were warranted in terminating the agency. It seems to us that in view of the fact that Barrett had a fifty per cent interest in the recovery, his authority to conduct the suit according to the dictates of his business judgment could not be revoked without an offer on Byrne and Bowman's part to secure to Barrett as much as he would have received by the reasonable settlement which he entered into. Byrne and Bowman might be willing to gamble on the result of an appeal to the Court of Appeals as to their half of the judgment. They were not privileged, however, to compel Barrett similarly to speculate with his share of the judgment. In short, an agency coupled with an interest cannot under familiar principles be terminated without securing the agent's interest. No such offer was made to Barrett. He was not asked to leave the prosecution of the final appeal to

Byrne and Bowman on condition that he would be paid approximately $33,000, less his share of the counsel fees to date. On the contrary, Byrne and Bowman took the wholly untenable position of saying, " You settle at your peril and must pay us half of the original judgment." This the plaintiffs could not do and they are bound by the settlement which was without any question a reasonable one.

We find that the plaintiffs are not entitled to any further interest on the amount deposited with the chamberlain than that allowed by him. We also find that by the judgment at Special Term plaintiffs have been allowed the precise amount due them under the settlement as modified by proper counsel fees.

The judgment should be in all respects affirmed, without costs.

MERRELL, J., concurs.

Judgment reversed, with costs to the defendant, and complaint dismissed, with costs. Appeal from order entered August 24, 1933, as resettled by an order entered September 15, 1933, dismissed. Order dated November 21, 1933, affirmed.

Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.