Sanford A. Kowal, administrator, *vs.* Sportswear By Revere, Inc.

Middlesex. November 9, 1966. — January 4, 1967.

Present: Wilkins, C.J., Spalding, Cutter, Spiegel, & Reardon, JJ.

*Contract,* Death of party, Termination, Performance and breach, Contract for personal services, Contract with salesman.

A contract between a company and a salesman who had worked for it as such for many years called for services of a personal nature and terminated upon the salesman's death during the contract period. [544]

Where a contract between a salesman and his employer provided for a commission of 6½% of goods shipped and paid for on orders obtained by or on behalf of the salesman, with a guaranty of such commission on 85% of all accepted orders, and it appeared that the salesman died during the period of the contract and that on orders obtained before his death more than 85% of the goods were shipped and paid for, some before and some after his death, it was held that the 6½% commission was payable on the full amount of the goods shipped and paid for after his death as well as on the full amount of those shipped and paid for prior thereto. [545]

BILL IN EQUITY filed in the Superior Court on May 28, 1964.

Following allowance of a motion to amend the suit to an action at law, the action was heard by *Tomasello, J.*

*Albert P. Zabin* for the plaintiff.

*Arthur S. Waldstein* for the defendant.

SPALDING, J.    This is an action of contract brought by the administrator of the estate of Joseph E. Prince to recover for commissions for sales made by Prince under a written contract.   The defendant's answer contained, among other things, a declaration in set-off alleging that it had overpaid Prince's estate in the amount of $1,708.87.[1] The case was submitted on a statement of agreed facts. The judge ordered judgment for the defendant on the plaintiff's amended declaration and for the plaintiff (original defendant) on the declaration in set-off.   The plaintiff appealed.

Prince had represented the defendant as a salesman for twenty-two years prior to his death on August 22, 1962.   A written contract, drafted by the defendant and running for the calendar year, had been entered into annually.   In 1961, because Prince was ill and unable fully to cover his territory, the defendant hired Sol Nadler to represent it in Prince's territory.   Prince was to receive commissions on orders obtained by Nadler.

The contract on which this action is based was dated January 2, 1962.   It provided that Prince would "work for the . . . [defendant] beginning January 2, 1962, for the purpose of selling and obtaining orders for the sweaters, sportswear, and other products offered for sale by the . . . [defendant]."   Prince could, upon his option and responsibility, employ assistants and make such arrangements as he desired, provided "that the work . . . [was] done by . . . [him] in such a manner as . . . [was] consistent with the achievement of the result contracted for."   Prince's commissions were to be calculated at the rate of 6½% of

---

[1] The parties agree that this figure is erroneous and that if there was an overpayment it was in the amount of $610.67.

"goods actually shipped into . . . [his] territory . . . and accepted and paid for by the customer, except" that he was guaranteed a 6½% commission "on . . . 85% of the total of all confirmed orders accepted by" the defendant. Under this contract, Prince continued to receive commissions in respect of Nadler's sales as well as his own. The contract was to expire on December 31, 1962. There was no provision relating to the death of Prince.

In 1962, the defendant paid or credited to Prince or his estate the sum of $18,435.74. The orders and shipments from and to Prince's territory in 1962 were as follows: Up to August 22, the date of his death, Prince obtained orders amounting to $247,608.68 and Nadler obtained orders amounting to $75,016.93. During the same period, goods amounting to $254,347.68 were actually shipped and paid for. Disregarding any orders or shipments made after that time, the commissions payable under the contract were $17,825.07.[2] Prior to Prince's death, orders in the amount of $96,836.96 had been obtained for the defendant by Prince and Nadler, but the goods pursuant to these orders were shipped after Prince's death. If the plaintiff is entitled to commissions on these shipments, the amount would be $6,294.40.[3] From August 22 to December 31, Nadler obtained orders in the amount of $82,431.50. If the plaintiff is entitled to commissions on these orders the amount would be $4,554.34.[4]

The defendant's position is that Prince was entitled only to commissions on orders obtained prior to his death, which would amount to $17,825.07, and that since Prince or his estate has already received $18,435.74, there was an overpayment of $610.67. The plaintiff's position is (1) that he

---

[2] The amount of all confirmed orders in 1962 prior to Prince's death was $322,625.61; 85% of this amount is $274,231.77; and 6½% of this is $17,825.07. The commissions are based upon 85% of confirmed orders ($274,231.77) rather than orders shipped ($254,347.68), as it is the larger amount.

[3] These commissions would be based upon 6½% of the full value of goods actually shipped. The plaintiff states in his brief that the proper figure is both $6,494.40 and $6,490.40, but neither figure is correct.

[4] These commissions would be based upon 6½% of 85% of confirmed orders.

is entitled to commissions in the amount of $6,294.40 based on orders obtained prior to Prince's death but shipped and paid for after that time, and (2) that he is entitled to commissions in the amount of $4,554.34 on orders obtained by Nadler after Prince's death.

In the absence of contrary provisions, contracts are generally held to survive the death of one of the parties. *Barrett* v. *Towne,* 196 Mass. 487, 491. But contracts which involve acts and services which can only be performed personally by the promisor or some other particular person are exceptions to this general rule. Such contracts terminate when death renders the personal performance impossible. *Harrison* v. *Conlan,* 10 Allen, 85, 86. *Marvel* v. *Phillips,* 162 Mass. 399. *Stearns* v. *Blevins,* 262 Mass. 577, 580–581. *Cutler* v. *United Shoe Mach. Corp.* 274 Mass. 341. The one party is excused from his contractual duties on grounds of impossibility of performance, and the other party is excused because of failure of consideration. See Restatement: Contracts, §§ 274, 399 and 459; Corbin, Contracts, § 1335; Williston, Contracts (Rev. ed.) §§ 838 and 1940. The services of a salesman would in general appear to be of a personal nature. See Corbin, Contracts, § 1335. In this case, Prince had twenty-two years' experience as the defendant's salesman. Even if he had employed assistants, it would have remained his responsibility to ensure that the work was done ''in such a manner as . . . [was] consistent with the achievement of the result contracted for.'' In view of the generally personal nature of a salesman's services, and particularly of Prince's long experience in his relationship with the defendant, the administrator could not have been expected to perform Prince's contractual duties satisfactorily. Prince's death having rendered the performance of his duties impossible, the defendant's obligations also ceased for failure of consideration.

There was, however, neither impossibility nor failure of consideration with respect to orders placed before Prince's death. Once Prince or Nadler had placed an order with the defendant, his services in respect to that order had been

fully performed, and the defendant was obligated to pay a commission. See *Harrison* v. *Conlan,* 10 Allen, 85; *Stearns* v. *Blevins,* 262 Mass. 577; Corbin, Contracts, § 1335. The defendant concedes it has some obligation in respect of these orders, but contends the obligation is limited to 85% of them. We do not agree. It appears that the provision of the contract which guaranteed commissions on at least 85% of confirmed orders was intended to protect Prince in the event that a substantial part of his services did not result in completed sales. But that is not the case here. These services did result in completed sales by the defendant. The shipment to and payment by customers, upon which the full payment of commissions was conditioned, did, in fact, occur. Since all salesmen's services in respect of these sales had been fully performed, the fact that the conditions of payment did not occur until after Prince's death does not excuse the defendant's obligation under the terms of the contract. See *Nutting* v. *Kneeland,* 328 Mass. 497. The plaintiff is entitled to recover commissions in the amount of $6,294.40 for orders placed before Prince's death but shipped after that time.

It appears, however, that the plaintiff should not recover commissions computed on 85% of the orders placed before Prince's death, in addition to the commissions for goods shipped after Prince's death, but ordered before that time. The result would be that the plaintiff, in the case of some orders, would recover once for the order and again for the shipment in respect of that same order. Since it appears that more than 85% of all orders placed before Prince's death were in fact shipped and paid for, the commissions due Prince or his administrator under the 1962 contract should be computed on the basis of 6½% of all goods shipped and paid for in respect of orders placed before Prince's death. It would appear that this amounts to $22,827.[5] The defendant having already paid $18,435.74,

---

[5] Goods worth $254,347.68 were shipped prior to Prince's death; 6½% of this is $16,532.60. This is added to $6,294.40 to give the total commissions for the year.

the plaintiff's recovery should be $4,391.26.

The orders for judgment are reversed and judgment is to be entered for the plaintiff in the sum of $4,391.26. Interest on this amount, unless agreed to by the parties, is to be determined by the trial judge.

*So ordered.*